No's 22-6177, 22-6199

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

TIMOTHY SEPI,

*Plaintiff-Appellant*,

v.

NETFLIX, INC., ROYAL GOODE PRODUCTIONS LLC,

*Defendant-Appellees*.

WHYTE MONKEE PRODUCTIONS LLC, TIMOTHY SEPI,

*Plaintiff-Appellants*,

v.

NETFLIX, INC., ROYAL GOODE PRODUCTIONS LLC,

*Defendant-Appellees*.

On Appeal from the United States District Court
for the Western District of Oklahoma
No. 5:20-cv-00933-D
Hon. Timothy D. DeGiusti, United States District Judge

## APPELLANTS' BRIEF

### [FEE-AND-COSTS APPEALS]

[Oral Argument Requested]

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
Gregory@DigitalJusticeFoundation.org

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(521) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorneys for Appellants*

# RULE 26.1 DISCLOSURE STATEMENT

(a)    Plaintiff-Appellant Whyte Monkee Productions LLC ("WMP") is a nongovernmental corporation (i) that has no parent corporation and (ii) for which no publicly held corporation owns 10% of more of its stock.  Plaintiff-Appellant Timothy Sepi is a natural person.

(b)    This is not a criminal case.

(c)    This is not a bankruptcy case.

Date: March 2, 2023                      Respectfully submitted,

                                         */s/ Andrew Grimm*
                                         Andrew Grimm

                                         *Attorney for Appellants*

# TABLE OF CONTENTS

**Page**

RULE 26.1 DISCLOSURE STATEMENT................................................................ ii

TABLE OF AUTHORITIES .................................................................................. vi

STATEMENT OF RELATED CASES ....................................................................1

JURISDICTIONAL STATEMENT .........................................................................2

RELEVANT STATUTORY PROVISIONS .............................................................4

     I.      SECTION 505 OF TITLE 17 OF UNITED STATES CODE .............................4

     II.     SECTION 1920 OF TITLE 28 OF UNITED STATES CODE ...........................5

STATEMENT OF ISSUES ....................................................................................6

     I.      THRESHOLD ISSUE ...................................................................................6

     II.     TAXABLE-COST ISSUES ............................................................................6

     III.    COPYRIGHT-FEE ISSUES .........................................................................7

INTRODUCTION AND STATEMENT OF THE CASE........................................9

SUMMARY OF ARGUMENT ...............................................................................13

STANDARD OF REVIEW ....................................................................................15

ARGUMENT ........................................................................................................16

     I.      IF THIS COURT REVERSES ON THE MERITS, THEN IT DOESN'T NEED
           TO FURTHER DECIDE THESE FEE-AND-COSTS ISSUES..........................16

     II.     THE DISTRICT COURT ERRED IN TAXING COSTS FOR A ZOOM VIDEO
           RECORDING. .........................................................................................18

           A.     The District Court taxed thousands of dollars in
                  deposition-videography expenses for Zoom recordings

that could have been obtained for free with the press of a button...............................................................................18

B.    Deposition-videography expenses are not explicitly authorized by the costs statue and are, therefore, not taxable under intervening Supreme Court authority, *Taniguchi* and *Rimini*..............................................20

C.    Spending thousands of dollars on Zoom recordings that could have been obtained for free with the press of a button is not necessary or reasonable. ......................................25

III.    THE DISTRICT COURT ERRED IN DECIDING TO AWARD COPYRIGHT FEES. .................................................................................28

A.    This Court should adopt two additional factors—the purposes-of-the-Copyright-Act factor and the chilling-effect factor—as part of its standard for copyright fee-shifting. ....................................................................28

i.    Respectfully, this Court should clarify whether it adopts or rejects the additional factors used by the Eighth and Ninth Circuits. ................................30

ii.    If adopted, the purposes-of-the-Copyright-Act factor weighs against an award of fees here. ...........................35

iii.    If adopted, the chilling-effect factor also weighs against an award of fees here...........................................38

B.    The District Court made legal errors and clear factual errors in holding that Plaintiffs' claims were objectively unreasonable..............................................................42

C.    The other factors weigh against an award of fees as well. .......52

i.    Frivolousness weighs against a fee factor. ....................52

ii.    Motivation weighs in favor a fee award but only slightly because of the other facts here...........................57

iii.    Compensation and deterrence weigh against a fee
        award as well. ...............................................................61

D. Balancing of the factors weigh against a fee award in total...........66

IV.    THE DISTRICT COURT PROPERLY CONCLUDED THAT DEFENDANTS'
       FEE REQUEST WAS EXCESSIVE, SO THE AMOUNT AWARDED IS NOT
       AT ISSUE ON APPEAL. ...........................................................68

CONCLUSION ......................................................................69

ORAL-ARGUMENT STATEMENT ......................................................70

CERTIFICATE OF COMPLIANCE....................................................72

ADDENDUM OF ORDERS & OPINIONS ..........................................73

| ADDENDUM CONTENTS | | | |
|---|---|---|---|
| *ECF* | *Date* | *Description* | *Page* |
| 81 | Sept. 28, 2022 | Attachment 1: Clerk Order Granting in Part and Denying in Part Defendants' Costs | Fee Add. 1 |
| 82 | Sept. 30, 2022 | Attachment 2: District Court Order Granting in Part and Denying in Part Defendants' Fees | Fee Add. 5 |
| 93 | Nov. 14, 2022 | Attachment 3: District Court Order Granting in Part and Denying in Part Defendants' Costs | Fee Add. 12 |

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aamot v. Peterson,
     2020 U.S. Dist. LEXIS 152123 (Dist. Minn. Aug. 21, 2020). ......................55

Acosta v. Maranto,
     2018 U.S. Dist. LEXIS 178453 (W.D. Okla. Oct. 17, 2018). ......................18

Action Tapes, Inc. v. Mattson,
     462 F.3d 1010 (8th Cir. 2006). ............................................................... 35, 63

Ballard v. Muskogee Regional Med. Ctr.,
     238 F.3d 1250 (10th Cir. 2001). ...................................................................16

Barnes Found. v. Twp. of Lower Merion,
     242 F.3d 151 (3rd Cir. 2001). ......................................................................55

Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.,
     27 F.4th 313 (5th Cir. 2022). .......................................................................61

Berkla v. Corel Corp.,
     302 F.3d 909 (9th Cir. 2002). ......................................................................36

Bisson-Dath v. Sony Computer Entm't Am. Inc.,
     2012 U.S. Dist. LEXIS 103159 (N.D. Cal. July 24, 2012). .........................53

Burrell v. Armijo,
     603 F.3d 825 (10th Cir. 2010). ....................................................................16

Cantrell Int'l Bhd. of Elec. Workers,
     69 F.3d 456 (10th Cir. 1995). ......................................................................25

Capitol Recs., LLC v. ReDigi Inc.,
     2022 WL 1046463 (S.D.N.Y. Apr. 7, 2022). ...............................................52

CGC Holding Co., LLC v. Hutchens,
     974 F.3d 1201 (10th Cir. 2020). ..................................................................33

Christiansburg Garment Co. v. EEOC,
     434 U.S. 412 (1978)............................................................................... 45, 50

Crawford Fitting Co. v. J. T. Gibbons, Inc.,
     482 U.S. 437 (1987)............................................................................... 22, 24

Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.,
    9 F.4th 803 (8th Cir. 2021). ............................................................16

Ellis v. University of Kansas Med. Ctr.,
    163 F.3d 1186 (10th Cir. 1998). ......................................................9

Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.,
    2019 U.S. Dist. LEXIS 14632 (D. Kan. Jan. 30, 2019). ................. 42, 43, 49

Ets-Hokin v. Skyy Spirits, Inc.,
    323 F.3d 763 (9th Cir. 2003). .................................... 28, 30, 31, 32, 35, 70, 71

Fantasy, Inc. v. Fogerty,
    94 F.3d 553 (9th Cir. 1996). ............................................................38

Faragalla v. Douglas Cty. Sch. Dist.,
    411 Fed. Appx. 140 (10th Cir. 2011). ............................................25

Farmer v. Arabian Am. Oil Co.,
    379 U.S. 227 (1964)........................................................................24

Ferman v. Jenlis, Inc.,
    2016 U.S. Dist. LEXIS 173185 (S.D. Iowa Dec. 5, 2016)...........................44

Fogerty v. Fantasy, Inc.,
    510 U.S. 517 (1994).................... 28, 30, 31, 35, 36, 38, 39, 45, 63, 64, 66, 70

Glacier Films (USA), Inc. v. Turchin,
    896 F.3d 1033 (9th Cir. 2018). ........................................... 32, 35, 38

Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC,
    925 F.3d 1140 (9th Cir. 2019). ........................................................41

Graham-Sult v. Clainos,
    738 F.3d 1131 (9th Cir. 2013). ......................................................17

Hartman v. Hallmark Cards, Inc.,
    833 F.2d 117 (8th Cir. 1987). ........................................................44

Hillmann v. City of Chi.,
    2017 U.S. Dist. LEXIS 130376 (N.D. Ill. Aug. 16, 2017). ..........................26

Hofheinz v. AMC Prods.,
    2003 U.S. Dist. LEXIS 16940 (E.D.N.Y. Sept. 1, 2003). ............................63

In re Williams Sec. Litig — WCG Subclass,
    558 F.3d 1144 (10th Cir. 2009). ....................................................15

vii

*Jo Ann Howard & Assocs., P.C. v. Cassity,*
    146 F. Supp. 3d 1071 (E.D. Mo. 2015). ......................................................26

*Jones v. Sternheimer,*
    387 F. App'x 366 (4th Cir. 2010). ...............................................................55

*Karam v. City of Burbank,*
    352 F.3d 1188 (9th Cir. 2003). ....................................................................54

*Karmo v. Morgan Creek Ent. Grp.,*
    2019 WL 13095278 (C.D. Cal. June 28, 2019)............................................52

*Killer Joe Nev., LLC v. Doe,*
    807 F.3d 908 (8th Cir. 2015). ................................................................ 30, 35

*Kirtsaeng v. John Wiley & Sons, Inc.,*
    579 U.S. 197 (2016)................................ 11, 28, 31, 37, 42, 43, 44, 45, 61, 66

*Leonard v. Stemtech Int'l, Inc.,*
    834 F.3d 376 (3rd Cir. 2016). ......................................................................42

*Lesley v. Spike TV,*
    2005 U.S. Dist. LEXIS 51305 (C.D. Cal. 2005). .................................. 39, 40

*Lifshitz v. Walter Drake & Sons, Inc.,*
    806 F.2d 1426 (9th Cir. 1986). ....................................................................55

*Lincoln v. BNSF Ry. Co.,* 900 F.3d 1166
    (10th Cir. 2018). ..........................................................................................23

*Live Face On Web, LLC v. Integrity Sols. Grp., Inc.,*
    421 F. Supp. 3d 1051 (D. Colo. 2019). .......................................................43

*Live Face on Web, LLC v. Renters Warehouse, LLC,*
    2019 U.S. Dist. LEXIS 37666 (D. Minn. Mar. 8, 2019). ............................44

*Lotus Dev. Corp. v. Borland Int'l Inc.,*
    140 F.3d 70 (1st Cir. 1998)........................................................ 36, 37, 45, 63

*Markham Concepts, Inc. v. Hasbro, Inc.,*
    2021 U.S. Dist. LEXIS 214365, (D.R.I. Nov. 5, 2021). ..............................53

*Meshwerks, Inc. v. Toyota Motor Sales U.S.A.,*
    528 F.3d 1258 (10th Cir. 2008). ...................................................... 15, 28, 45

*Mitchell v. City of Moore,*
    218 F.3d 1190 (10th Cir. 2000). ....................................................................9

Mitek Holdings, Inc. v. Arce Eng'g Co.,
   198 F.3d 840 (11th Cir. 1999). ................................................. 36, 37

Neitzke v. Williams,
   490 U.S. 319 (1989)................................................................ 53, 56

Olan Mills Inc. v. Linn Photo Co.,
   23 F.3d 1345 (8th Cir. 1994). ...........................................................17

Palladium Music, Inc. v. EatSleepMusic, Inc.,
   398 F.3d 1193 (10th Cir. 2005). ....................................... 15, 42, 57

Pascouau v. Martin Marietta Corp., 1999 U.S. App. LEXIS 15712 (10th Cir. July
   14, 1999) (unpublished)...................................................................16

Pearson Educ. Inc. v. Almgren,
   685 F.3d 691, 696 (8th Cir. 2012). .................................................35

Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.,
   2004 U.S. Dist. LEXIS 5648 (S.D.N.Y. Apr. 6, 2004). ................................31

Perfect 10, Inc. v. Giganews, Inc.,
   847 F.3d 657 (9th Cir. 2017). ......................................... 30, 31, 35

Porto v. Guirgis,
   659 F. Supp. 2d 597 (S.D.N.Y. 2009). ...........................................44

Rimini St., Inc. v. Oracle USA, Inc.,
   139 S. Ct. 873 (2019)....................................................... 21, 70

Sciaroni v. Consumer Plaintiffs,
   855 F.3d 913 (8th Cir. 2017). .........................................................12

Seltzer v. Green Day, Inc.,
   725 F.3d 1170 (9th Cir. 2013). .......................................................44

Sofa Entm't, Inc. v. Dodger Prods.,
   709 F.3d 1273 (9th Cir. 2013). .......................................................36

Stan Lee Media, Inc. v. Walt Disney Co., 2015 U.S. App. LEXIS 16055 (10th Cir.
   May 26, 2015).................................................................................42

Taniguchi v. Kan Pac. Saipan, Ltd.,
   566 U.S. 560 (2012)........................................................... 22, 23

Tilton v. Capital Cities/ABC, 115 F.3d 1471
   (10th Cir. 1997). ..................................................... 18, 19, 20, 70

ix

Unit Drilling Co. v. Enron Oil & Gas Co.,
    108 F.3d 1186 (10th Cir. 1997). ....................................................16

United States v. Maldonado-Passage,
    56 F.4th 830 (10th Cir. 2022). ......................................................59

United States v. Salazar,
    987 F.3d 1248 (10th Cir. 2021). ...................................................23

Viva Video, Inc. v. Cabrera, 9 F. App'x 77 (2d Cir. 2001) (unpublished). ...... 44, 50

Vivid Sites, LLC v. Millsap,
    2017 U.S. Dist. LEXIS 46364 (E.D. Mo. Mar. 29, 2017)..................... 45, 49

West v. Perry,
    2009 U.S. Dist. LEXIS 63277 (E.D. Tex. July 23, 2009). ...........................18

Williams v. Gaye,
    885 F.3d 1150 (9th Cir. 2018). .....................................................43

## Statutes

17 U.S.C.  § 505. ............................................................................4, 30

28 U.S.C. § 1920. ............................................................. 5, 6, 9, 20, 22, 25

28 U.S.C. § 1924. ...........................................................................25

## Other Authorities

"Enabling and starting local recordings," Zoom Support.......................................26

"Getting started with recording," Zoom Support....................................................26

"Transcript Definition," Merriam Webster............................................................22

"Transcript," BALLANTINE'S LAW DICTIONARY. ...................................................22

## Rules

Fed. R. App. P. 28 ..........................................................................12

## Treatises

NIMMER ON COPYRIGHT (2019). ..................................................... 47, 50

**STATEMENT OF RELATED CASES**

A related merits appeal is currently pending before this Court; has been fully briefed; and has been calendared for oral argument on March 22, 2023. Whyte Monkee Productions LLC v. Netflix, Inc., No. 22-6086 (10th Cir., docketed May 31, 2022).


Date: March 2, 2023                    Respectfully submitted,

                                       /s/ Andrew Grimm
                                       Andrew Grimm

                                       Attorney for Appellants

## JURISDICTIONAL STATEMENT

(A)    These appeals concern a copyright fee-shifting order, Fee Add. 5-11,[1] and a costs order, Fee Add. 12-18, which are collateral judgments arising from an underlying copyright-infringement case.  The District Court had exclusive federal-question jurisdiction.  28 U.S.C. §§ 1331 (federal-question jurisdiction), 1338(a) (exclusive jurisdiction).

(B)    The District Court entered final judgment below on collateral fee-and-costs issues.  Fee Add. 5-18; Fed. R. Civ. P. 58(a)(3).  This Court has appellate jurisdiction.  28 U.S.C. § 1291.

(C)    The District Court entered its fee order on September 30, 2022.  Fee Add. 5-11; Fed. R. App. P. 4(a)(7)(A)(i).  Notice of appeal was timely filed on October 25, 2022.  Fee App. 221-223; Fed. R. App. P. 4(a)(1)(A); 28 U.S.C. § 2107(a).  Then the District Court entered its costs order on November 14, 2022.  Fee Add. 12-18.  An amended notice of appeal was then timely filed on November 24, 2022.

---

[1] In this Brief, "Fee Add. 5-11" cites pages 5-11 of the addendum found at the end, *infra*.  Likewise, Appellants' Fee Appendix is cited as "Fee App."  "Merits App." cites to the appendix in No. 22-6086.  Unless otherwise indicated, all emphasis is supplied.  Internal footnotes, quotation marks, and brackets are usually omitted from quoted material.

(D)    These appeals arise from final collateral judgments.  Fee Add. 5-11 (copyright fees); 12-18 (costs).

# RELEVANT STATUTORY PROVISIONS

**I.     SECTION 505 OF TITLE 17 OF UNITED STATES CODE**

### § 505.  Remedies for infringement: Costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

## II.    SECTION 1920 OF TITLE 28 OF UNITED STATES CODE

### § 1920.  Taxation of costs

A judge or clerk of any court of the United States may tax as costs the following:

**(1)**  Fees of the clerk and marshal;

**(2)**  Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

**(3)**  Fees and disbursements for printing and witnesses;

**(4)**  Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

**(5)**  Docket fees under section 1923 of this title;

**(6)**  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

# STATEMENT OF ISSUES

## I.    THRESHOLD ISSUE

- *Effect of Reversal in the Merits Appeal*: If this Court reverses in the related merits appeal, No. 22-6086, should it vacate the District Court's award of copyright fees and costs without further consideration of the substance of the issues raised in these fee-and-costs appeals?

  Yes.  <u>See</u> Section I, *infra*.

## II.    TAXABLE-COST ISSUES

- *Whether Video-Deposition Expenses Can Be Taxed in Light of Intervening Supreme Court Authority*: In 1997, this Court held that expenses for video recordings of depositions were taxable on the theory that such expenses were "**<u>implicitly</u>**" authorized under 28 U.S.C. § 1920(2).  Does intervening Supreme Court authority requiring "**<u>explicit</u>**" statutory authorization in order for a category of costs to be taxable operate as intervening authority that undermines the 1997 holding?

  Yes.  <u>See</u> Section II.B, *infra*.

- _Whether Thousands of Dollars in Video-Deposition Expenses Were Necessarily and Reasonably Incurred on a Platform Providing Free Video Recording_: This Court requires that any costs taxed must be necessary and reasonable in amount.  Was it clear error to tax nearly $3,000 in deposition-videography expenses as costs when the very platform that was used (Zoom) permits _free_ recording with the press of a button?

  Yes.  See Section II.C, _infra_.

### III.    COPYRIGHT-FEE ISSUES

- _Additional Copyright Fee-Shifting Factors_: For a Section 505 copyright fee-shifting analysis, does this Court adopt or reject the purposes-of-the-Copyright-Act factor and/or the chilling-effect factor, adopted by other Courts of Appeals?  If so, will this Court exercise its discretion to apply these factors here on appeal or remand for the District Court to do so in the first instance?

  Yes, this Court should adopt the factors, see Section III.A.i, _infra_, either applying them, see Sections III.A.ii-iii, _infra_, or remanding, in its full discretion.

- *Objective Reasonableness*:   The most important factor of a Section 505 copyright fee-shifting analysis is whether the non-prevailing party asserted objectively reasonable positions on the merits, meaning that the positions were not without legal and factual support.   Were Plaintiffs' claims below objectively reasonable (and did the District Court err as a matter of law in overlooking substantial legal support for the infringement positions as well as clearly err in its assessment of the facts?)

  Yes.  See Section III.B, *infra*.

- *Frivolousness, Motivation, and Particular Circumstances Requiring Deterrence / Compensation*:  Did the remaining Section 505 copyright fee-shifting factors weigh in favor of a fee award?

  Yes (on motivation, see Section III.C.ii, *infra*) and no (on frivolousness and compensation/deterrence, see Sections III.C.i and III.C.iii, *infra*).

- *Weighing of the Factors*: Ultimately, did the District Court abuse its discretion in deciding to award fees when 3 factors, including the most important factor (and 2 additional factors if this Court adopts them) weigh *against* a fee award and only one factor weighs in favor of a fee award?

  Yes.  See Section III.D, *infra*.

## INTRODUCTION AND STATEMENT OF THE CASE

These appeals are fee-and-costs appeals.

There's often a kneejerk instinct to treat fee-and-costs issues as an afterthought, as litigation's calm denouement after the central action, the merits, are decided. These instincts are not bad instincts. After all, they track established fees-and-costs standards.

For *costs*, the instinct stems from the fact that "Federal Rule of Civil Procedure 54 makes the award of costs *presumptive*: 'costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs.'" See <u>Mitchell v. City of Moore</u>, 218 F.3d 1190, 1204 (10th Cir. 2000). For *fees*, especially in certain fee-shifting contexts such as civil rights, the right of a prevailing party to fees can be all but a foregone conclusion. See, e.g., <u>Ellis v. University of Kansas Med. Ctr.</u>, 163 F.3d 1186, 1193 (10th Cir. 1998) ("As the attorneys of prevailing plaintiffs *in a civil rights action*, the appellants were *entitled* to an award of attorney's fees, expenses, and costs associated with the prosecution of the case[.]").

So, these instincts often make sense. But they are inapposite here because this case involves open legal questions. One such question goes to the *eligibility* of a certain category of expenses (deposition videography) to be taxed under 28 U.S.C. § 1920(2) in light of intervening Supreme Court authority.

The question, stated more specifically, is whether a 1997 *implicit*-authority rationale for the taxation of costs (as stated in this Court's 1997 <u>Tilton</u> decision) remains a viable rationale in light of intervening Supreme Court cases (<u>Taniguchi</u> in 2012 and <u>Rimini</u> in 2019) that require *explicit* statutory authority as determined by plain meaning in order for a category of costs to be eligible for taxation.  <u>See</u> Section II.B, *infra*.

There is also a novel question about whether a party can tax thousands of dollars in videography expenses associated with Zoom recording when Zoom permits *free* recording with a press of button.  <u>See</u> Section II.C, *infra*.  These questions are important because, although in any individual case taxable costs are often modest in amount, the taxable categories of costs can add up and affect many parties—including some of the most vulnerable litigants with the least access to law.

Moreover, Section 505's copyright fee-shifting works quite differently than civil-rights fee-shifting.  First of all, copyright fee-shifting is not presumptive.  Second, it involves several nonexclusive factors as set forth by the Supreme Court in <u>Fogerty</u> (1994) and further clarified in <u>Kirtsaeng</u> (2016).  (And, <u>Kirtsaeng</u> is especially ripe for construal by this Court because this Court has not had the occasion to construe the law of copyright fee-shifting since <u>Kirtsaeng</u> was decided by the Supreme Court in 2016.)

Furthermore, a few Courts of Appeals apply additional factors guided by the Supreme Court's two decisions—*i.e.*, the purposes-of-the-Copyright-Act factor and the chilling-effect factor. So, a key question raised in these appeals is whether this Court will adopt these additional factors as the law of the Tenth Circuit as well. <u>See</u> Section III.A, *infra*.

For all these reasons, these fee-and-costs appeals raise issues that are significant well beyond the Parties themselves and go to some key issues regarding taxable costs and copyright-fee analysis.

\* \* \* \* \*

Appeal No. 22-6086 is the relevant merits appeal that arose out of the same district-court case as these fee-and-costs appeals.

Accordingly, these fee-and-costs appeals assume some familiarity with the factual background included in the Statement of the Case in the merits appeal. <u>Cf. Kirtsaeng v. John Wiley & Sons, Inc.</u>, 579 U.S. 197, 207 (2016) ("A district [or appellate] court that has ruled on the merits of a copyright case [or appeal] can easily assess whether the losing party advanced an unreasonable claim or defense. That is closely related to what the court has already done: In deciding any case, a judge cannot help but consider the strength and weakness of each side's arguments.").

To the extent permissible, this Statement adopts by reference the Statement from No. 22-6086. <u>Cf.</u> Fed. R. App. P. 28(i) (permitting "adopt[ion] by reference" in analogous circumstances); <u>Sciaroni v. Consumer Plaintiffs</u>, 855 F.3d 913, 915 (8th Cir. 2017) (noting FRAP 28(i) "does not state" precisely how to adopt by reference).

The post-judgment procedural posture here is relatively simple. The Parties disputed fees and costs after judgment. The District Court awarded fees, Fee Add. 5-11, and taxed costs, Add. 12-18, but exercised its discretion to award less than the Defendants sought in fees. The District Court explained that the "amount sought, however, exceeds that which is reasonable and equitable, given the specific circumstances of this case." Fee Add. 10.

## SUMMARY OF ARGUMENT

I.    Reversal on the merits of the copyright claims in the related merits appeal, No. 22-6086, would be dispositive of this appeal.  If this Court reverses the grant of summary judgment on the copyright claims below, then the fee award should be summarily vacated without further consideration of the substance of these fees-and-costs appeals.  In that scenario, the remaining questions raised and briefed in these appeals would be unnecessary to decide.

II.   Only one category of expenses is at issue in this appeal, but it's an important category: deposition-videography expenses.  The question is whether in light of intervening Supreme Court precedent this category is still taxable.  The 1997 <u>Tilton</u> decision said these expenses were taxable on an implicit-authorization rationale.  But, later Supreme Court decisions have required explicit statutory authority under ordinary meaning.   Under intervening authority, an implicit-authorization rationale is no longer viable.  Furthermore, because these expenses were all associated with Zoom recording (which is offered for free at the push of a button), Defendants did not justify what these expenses were for and the District Court clearly erred in awarding them as necessary costs.

13

III.    With respect to copyright fees, this Court should adopt the purposes-of-the-Copyright-Act factor and the chilling-effect factor adopted by other Courts of Appeals.  In applying these factors, along with the other Section 505 copyright fee-shifting factors, all but one of the factors weigh against an award of fees.  Thus, the District Court should not have awarded fees and it was an abuse of discretion to have done so.

IV.    This appeal does not challenge the amount of fees awarded beyond challenging the threshold question of whether fees should have been awarded at all.

## STANDARD OF REVIEW

The standard of review for costs is for abuse of discretion: "we review costs awards only for an abuse of that discretion." <u>In re Williams Sec. Litig — WCG Subclass</u>, 558 F.3d 1144, 1148 (10th Cir. 2009). "A district court abuses its discretion where it (1) commits legal error, (2) relies on clearly erroneous factual findings, or (3) where no rational basis exists in the evidence to support its ruling." <u>Id.</u>

The standard of review for fees is for abuse of discretion: "Section 505 of the Copyright Act permits reasonable fees and costs at the court's discretion." <u>Meshwerks, Inc. v. Toyota Motor Sales U.S.A.</u>, 528 F.3d 1258, 1270 n. 11 (10th Cir. 2008). Accordingly, this Court reviews a district court's decision on "attorney's fees for abuse of discretion." <u>Palladium Music, Inc. v. EatSleepMusic, Inc.</u>, 398 F.3d 1193, 1200 (10th Cir. 2005).

# ARGUMENT

## I.   IF THIS COURT REVERSES ON THE MERITS, THEN IT DOESN'T NEED TO FURTHER DECIDE THESE FEE-AND-COSTS ISSUES.

Reversal on the merits of the copyright claims in the related merits appeal, No. 22-6086, would be dispositive of these fee-and-costs appeals.  That's because reversal on the merits there would entail vacating the fees-and-costs judgments issued below.

Where this Court reverses an underlying judgment on the merits, it vacates related fees-and-costs judgments.  E.g., Burrell v. Armijo, 603 F.3d 825, 836 (10th Cir. 2010) (noting, if a judgment is "reversed on the merits, the court must also reverse an award of attorney fees"); Ballard v. Muskogee Regional Med. Ctr., 238 F.3d 1250, 1254 (10th Cir. 2001) (same); Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1194 (10th Cir. 1997) ("In light of our disposition of this case [reversing on the merits], we vacate the [fee] awards[.]"); Pascouau v. Martin Marietta Corp., 1999 U.S. App. LEXIS 15712, *39 (10th Cir. July 14, 1999) (unpublished) (same).

This principle applies to copyright claims as well.  E.g., Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc., 9 F.4th 803, 812 (8th Cir. 2021) ("revers[ing] the district court's grants of summary judgment" in copyright case and, so, "vacat[ing]" related fee orders).

16

In the copyright context too, if the appellate court reverses the underlying judgment on the merits, then it "must" vacate the related fee judgment without further ado.  E.g., Olan Mills Inc. v. Linn Photo Co., 23 F.3d 1345, 1349 (8th Cir. 1994) ("Based on our holdings, we **must** set aside the district court's award of attorney's fees[.]"); Graham-Sult v. Clainos, 738 F.3d 1131, 1157 (9th Cir. 2013) ("Because we reverse the district court's dismissal of this claim, we also vacate the fee award[.]").

* * * * *

If this Court reverses on the merits of the copyright claims in the related merits appeal, No. 22-6086, then it follows that this Court should also vacate the fee order and costs order issued below as a matter of course.  In that sense, the issues in the related merits appeal are effectively threshold issues for this fee appeal.  Reversal in the merits appeal would render the remaining issues raised in this Brief unnecessary to decide.

17

## II.    THE DISTRICT COURT ERRED IN TAXING COSTS FOR A ZOOM VIDEO RECORDING.

### A.    The District Court taxed thousands of dollars in deposition-videography expenses for Zoom recordings that could have been obtained for free with the press of a button.

Below, Defendants sought to tax over $9,000 for a single two-day deposition.  Fee Add. 1.  The Clerk refused to tax the bulk of these requested costs—granting $2,490.95 which is already above the market rate for two depositions (or one two-day deposition).[2]  Id.

Defendants moved for review by the District Court, seeking to tax another $5,000 in deposition-*videography* expenses.  Then, the Court taxed nearly $3,000 in additional expenses for the deposition-videography expenses.  Fee Add. 17 (taxing "video deposition fees in the amount of $2,985.00").

---

[2] In fact, Defendants' own cited authorities below disclosed an average price below $1,000 per deposition.  E.g., Tilton v. Capital Cities/ABC, 115 F.3d 1471, 1473 (10th Cir. 1997) (taxing "$48,614.44 for the transcription costs associated with sixty-two depositions" for an average of **$725.59 per deposition** ($48,614.44 / 67)); Acosta v. Maranto, 2018 U.S. Dist. LEXIS 178453, *2 (W.D. Okla. Oct. 17, 2018) ("$4,686.57" incurred "in connection with the deposition of eight witnesses, four deposed by Plaintiff and four deposed by Defendants"—which averages out to **$585.83 per deposition** ($4,686.57 / 8)); West v. Perry, 2009 U.S. Dist. LEXIS 63277, *12-13 (E.D. Tex. July 23, 2009) ("$1.53 per page" which adds up to a total of **$992.97** over two days here (337 pages for one and 312 pages for the second day).  All of these were *Defendants*' cited authorities below and go to show seeking $9,000 (requested) and getting $5,000 (actual amount taxed by the District Court) is well out of line with prevailing rates.

There are two errors with taxing these video-deposition expenses as costs. _First_, the District Court relied upon <u>Tilton v. Cap. Cities/ABC, Inc.</u>, 115 F.3d 1471, 1477 (10th Cir. 1997), for the proposition that these video-deposition expenses were taxable.  But, <u>Tilton</u>'s implicit-authorization rationale has been undermined by subsequent Supreme Court authority holding that explicit statutory authorization as determined by the plain and ordinary meaning of the text is required to tax.  And, under this authority, <u>Tilton</u>'s implicit-authorization rationale is no longer good law.  <u>See</u> Section II.B, _infra_.

_<u>Second</u>_, even assuming _arguendo_ that these costs were eligible for taxation in some circumstances, it was clear error to award them here.  The District Court committed clear error in taxing these as _<u>necessary</u>_ costs insofar as the depositions were conducted over Zoom—an Internet platform that permits _<u>free</u>_ recording _<u>with the press of a button</u>_.  Defendants provided no justification for why thousands of dollars in video-deposition expenses should be taxed when the very platform they used provides _<u>free</u>_ recordings.  <u>See</u> Section II.C, _infra_.

For both reasons, the District Court should not have taxed deposition-videography expenses as costs below: they are not taxable as a matter of law under intervening Supreme Court authority requiring _<u>explicit</u>_ statutory authority under plain meaning _<u>and</u>_ it's simply not necessary (or reasonable) to spend thousands of dollars on something provided for free.

**B.     Deposition-videography expenses are not explicitly authorized by the costs statue and are, therefore, not taxable under intervening Supreme Court authority, <u>Taniguchi</u> and <u>Rimini</u>.**

The District Court relied upon <u>Tilton v. Cap. Cities/ABC, Inc.</u>, 115 F.3d 1471, 1477 (10th Cir. 1997), for the proposition that deposition-videography expenses are taxable.   Fee Add. 13-14.    <u>Tilton</u>'s rationale for permitting the taxation of deposition-videography expenses under 28 U.S.C. § 1920(2) is provided in the following block quote:

> [T]he costs associated with videotaping a deposition are taxable under section 1920(2).   In so holding, *we recognize that section* **1920(2) does *not* explicitly provide for the taxation of costs associated with video depositions.**   *Federal Rule of Civil Procedure 30*(b)(2)-(3), however, authorizes videotape depositions as an alternative to traditional stenographic depositions.   Interpreting section 1920(2) in conjunction with Rule 30(b)(2)-(3), *we hold section 1920(2)* **implicitly** *permits taxation of the costs of video depositions*.
>
> Moreover, we recognize that permitting recovery of the costs of video depositions comports with *public policy*.   We see no reason to penalize a prevailing party because the party has chosen to preserve and present testimony through a videotape instead of a printed transcript.   "Videotaped depositions are a necessary and time effective method of preserving witnesses' time and allocating precious court and judicial time in this age of advanced court technology and over-crowded court calendars.   Thus, we must not seem reluctant to adopt any and all time-saving methods that serve to improve our system of justice.

<u>Id.</u> at 1477 (internal brackets and footnotes omitted); <u>see also</u> <u>id.</u> at 1477 n.2 (collecting cases); <u>id.</u> at 1477 n.3 (noting alternative situations).

In short, <u>Tilton</u> gave three rationales for its holding: (1) *implicit* statutory authority, (2) a comparison with Civil Rule 30,  and (3) policy preferences.  But none of these hold up to scrutiny today.  Most importantly, <u>Tilton</u> states that deposition-videography costs are "**<u>implicitly</u>**" authorized by statute.  Yet, ultimately, <u>Tilton</u>'s conclusion that the costs statute "**<u>does not explicitly</u>** *<u>provide for the taxation of costs associated with video depositions</u>*" should lend itself toward reversal of the taxation below.

That's because, in 2019, the Supreme Court repeatedly insisted that taxable costs must be authorized by "**<u>explicit statutory authority</u>**[.]"  <u>Rimini St., Inc. v. Oracle USA, Inc.</u>, 139 S. Ct. 873, 878 (2019).  The costs statutes—28 U.S.C. §§ 1821, 1920—"define the full extent of a federal court's power to shift litigation costs **<u>absent express statutory authority to go further</u>**."  <u>Id.</u>  Implicit readings of the statute simply aren't good enough because the Supreme Court requires "**<u>explicit</u>** *<u>statutory authority</u>*" such that the statute must "*<u>refer</u>* **<u>explicitly</u>**" to a category of costs for them to be taxable.  <u>Id.</u>

Given the Supreme Court's insistence upon "**<u>explicit</u>** statutory authority," <u>Tilton</u>'s admission that the costs statute "does **<u>not explicitly</u>**" provide for the taxation of deposition-videography expenses should end the matter: what the costs statute does not provide for explicitly is simply not taxable.

21

After all, the very point of the costs statute is to "**impose *rigid* controls on cost-shifting in federal courts**." <u>Crawford Fitting Co. v. J. T. Gibbons, Inc.</u>, 482 U.S. 437, 444 (1987). Indeed, the statute permits taxation of costs for "transcripts"—not videos. 28 U.S.C. § 1920(2). Thus, video recordings of a deposition aren't taxable because the words in the costs statute are construed by their "**ordinary meaning**." <u>Taniguchi v. Kan Pac. Saipan, Ltd.</u>, 566 U.S. 560, 566 (2012).

The ordinary meaning of the word "transcript" does not encompass videos. "[Transcript Definition](#)," Merriam Webster ("1 a: a written, printed, or typed copy *esp*[.]: a usually typed copy of dictated or recorded material"); "Transcript," Ballantine's Law Dictionary ("A written or typewritten copy. A typewritten transcript of the court reporter's stenographic notes taken on trial. A deposition reduced to writing."). A video is plainly not a transcript in ordinary usage. Rather, a video is a recording.

That's dispositive here.

Consider <u>Taniguchi</u>. There, the Supreme Court held that the costs statute's reference to interpreters includes only *oral* translation, not the translation of *documents*, because the translation of documents is not ordinarily referenced by the word interpreter: "Robert Fagles made famous translations into English of the

Iliad, the Odyssey, and the Aeneid, but no one would refer to him as an English-language 'interpreter' of these works." Taniguchi, 566 U.S. at 569.

So too here. No one would ever refer to a video as a transcript. No one would *read* a video. No one would *watch* a transcript. The two are plainly not the same. In ordinary meaning, a transcript does not include a video. Thus, videos aren't taxable.

In sum, Tilton's holding that deposition videography is *implicitly* taxable as a transcript is no longer good law in light of intervening authority requiring *explicit* statutory authority. See United States v. Salazar, 987 F.3d 1248, 1254 (10th Cir. 2021) ("A three-judge panel may overrule a precedent without en banc consideration in light of a statutory change or *intervening Supreme Court precedent*. […] This is true even if the intervening Supreme Court case is not directly on point: 'The question is not whether an intervening Supreme Court case is on all fours with our precedent, but rather whether the subsequent Supreme Court decision contradicts or invalidates our prior analysis.'"); Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1183 (10th Cir. 2018) ("A Supreme Court decision is 'intervening' if it 'is contrary to or invalidates our previous analysis.'").

Here, Taniguchi and Rimini are intervening Supreme Court authority that undermine Tilton's implicit-authority rationale.

23

Furthermore, <u>Tilton</u>'s Rule 30 analysis is no longer good law either. Rule 30(f)(3) itself expressly distinguishes between a "transcript ***or*** recording" indicating that the two are not the same under that Rule as well. Fed. R. Civ. P. 30(f)(3).

Rule 30 as now written undermines <u>Tilton</u>'s analysis. Moreover, <u>Tilton</u> gets Rule 30 wrong: its purpose was to *<u>reduce</u>* the costs of depositions, not encourage a *sub silentio* expansion of a costs *<u>statute</u>* (a statute meant to limit the taxation of costs) via a federal rule. Indeed, the *<u>statutory</u>* purpose of the rule is to avoid cost-shifting, so <u>Tilton</u>'s position on public policy is not on all fours with the Supreme Court's view of the costs statute, which the Supreme Court says had the purpose to "**<u>impose rigid controls on cost-shifting in federal courts</u>**." <u>Crawford Fitting</u>, 482 U.S. at 444.

Congress' narrow view of taxable costs furthered the policy of access to the courts, *i.e.*, to ensure that "access to the courts be not effectively denied those of moderate means." <u>Farmer v. Arabian Am. Oil Co.</u>, 379 U.S. 227, 236-237 (1964) (Goldberg, J., concurring).

### C.    Spending thousands of dollars on Zoom recordings that could have been obtained for free with the press of a button is not necessary or reasonable.

Whether *videography* is taxable at all and whether it was necessary are addressed above.  <u>See</u> Section II.B, *supra*.  Yet, *even if* the *videography* were taxable and necessarily incurred, $3,000 in *costs for Zoom recording* was not necessary or reasonable.

The statutory framework has **two necessity requirements**.  Section 1920 requires that the respective "*transcripts*" and/or "*copies*" be "*necessarily obtained* for use in the case[.]"  28 U.S.C. § 1920(2), (4).  Yet, the statute goes further: Section 1924 requires that the "*item of cost*" itself "has been *necessarily incurred* in the case[.]"  28 U.S.C. § 1924.  Thus, the statute doesn't merely require that the *videography* be necessary, <u>see</u> Section II.B, *supra*, but also that the *costs for videography* be necessary.  That's why courts "**deny costs** to a prevailing party" where "**the costs are unreasonably high or unnecessary**[.]"  <u>See</u> <u>Cantrell Int'l Bhd. of Elec. Workers</u>, 69 F.3d 456, 459 (10th Cir. 1995) (en banc); <u>Faragalla</u>, 411 F. App'x at 161 ("**Our precedents establish that the amount a prevailing party requests must be *reasonable*.**").

Defendants' expenses were neither necessarily incurred nor reasonable.  $3,000 in videography expenses for a single, two-day deposition is neither necessary nor reasonable in light of the fact that the platform used for the deposition—*i.e.*, Zoom—permits free recording with the push of a button.

The deposition at issue here was "conducted remotely using the **Zoom platform**." Fee App. 25 ¶ 7 (Evitt Decl.).  Zoom offers videography for **free**, even without paying for Zoom.  "Enabling and starting local recordings," Zoom Support (last accessed Feb. 25, 2023) ("Local recording is available to **free** and paid subscribers.").  Likewise, Zoom's video-recording options are available at the push of a button.  "Getting started with recording," Zoom Support (last accessed Feb. 25, 2023) ("After starting your meeting, you start recording by pressing **Record** ⊙ on the bottom of your Zoom meeting window.").  In short, Defendants were using a platform that permits **free videography with the push of a button**.

Thus, the _costs_ for videography were **not** _necessary_ or _reasonable_ because a free alternative was available with the mere click of a button: "**Where a cheaper, feasible alternative exists for the presentation of evidence to the finder of fact, costlier options may not be said to be 'necessary' within the meaning of § 1920(4), and are instead merely 'glitz' for which the losing party is not obligated to pay.**"  E.g., Jo Ann Howard & Assocs., P.C. v. Cassity, 146 F. Supp. 3d 1071, 1088 (E.D. Mo. 2015); Hillmann v. City of Chi., 2017 U.S. Dist. LEXIS 130376, *11 n.5 (N.D. Ill. Aug. 16, 2017) (refusing courier costs in the face of "convenient, reliable, and cheaper alternatives" like "U.S. Postal Service").

In sum, even if the Zoom videography is deemed taxable as a matter of the law, taxing thousands of dollars, with explanation, when Defendants use a free-recording platform isn't reasonable or necessary.  It's clear error.

### III. THE DISTRICT COURT ERRED IN DECIDING TO AWARD COPYRIGHT FEES.

**A.  This Court should adopt two additional factors—the purposes-of-the-Copyright-Act factor and the chilling-effect factor—as part of its standard for copyright fee-shifting.**

Fogerty set forth four "nonexclusive" factors for determining whether or not to award copyright fees under Section 505. See Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n. 19 (1994) ("nonexclusive factors"); Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 202 (2016) ("nonexclusive factors"); Meshwerks, 528 F.3d at 1270 n.11 (10th Cir. 2008) ("Non-exclusive factors").

Beyond these non-exclusive factors, a few Courts of Appeals have adopted two additional factors for deciding whether to award copyright fees. Specifically, other Circuits have "added as additional" factors the following:

1. Whether awarding fees would further "the purposes of the Copyright Act[;]" and

2. Whether awarding fees would impose a "chilling effect" on impecunious creators.

E.g., Ets-Hokin v. Skyy Spirits, Inc., 323 F.3d 763, 766 (9th Cir. 2003). Critically, it appears to be an open question of law as to whether this Circuit accepts or rejects these two additional factors.

Notably, the District Court did not address these two additional factors when briefed on them below, possibly because, as of this time, this Court has not adopted or rejected them as part of the law of this Circuit. Respectfully, this Court is requested to adopt them.

If this Court adopts them, it could remand for reconsideration of the fee award by the District Court in light of the Tenth Circuit's adoption of these two additional factors. <u>See</u> Section III.B.i, *infra*. Alternatively, if the Court adopts the two additional factors, it could apply them in the first instance to give guidance on how the two factors should be applied. As discussed below, it is respectfully submitted that both factors weigh against an award of fees here—and strongly so. <u>See</u> Section III.B.ii, *infra* (purposes-of-the-Copyright-Act factor); Section III.B.iii, *infra* (chilling-effect factor).

In sum, if the Court adopts these two additional factors, it could <u>*either*</u> vacate the fee award on this basis and remand for reconsideration in light of this Circuit's adopting of these factors or, alternatively, it could apply these factors itself *ab initio*. Whichever it chooses, Plaintiffs submit that these factors are illuminating and provide important guidance in conducting a copyright-fees analysis.

On this open question, the Court is respectfully requested to adopt both factors.

   i. <u>Respectfully, this Court should clarify whether it adopts or rejects the additional factors used by the Eighth and Ninth Circuits.</u>

Beyond the nonexclusive <u>Fogerty</u> factors, some Circuits have "added" additional factors when deciding whether to award copyright fees. <u>Ets-Hokin</u>, 323 F.3d at 766 (9th Cir. 2003); <u>Perfect 10, Inc. v. Giganews, Inc.</u>, 847 F.3d 657, 675 (9th Cir. 2017) ("We have added[…]"). The central legal question regarding fees on appeal is whether this Court adopts or rejects these additional factors—the purposes-of-the-Copyright-Act factor and the chilling-effect factor—as part of the law of this Circuit.

<u>First</u>, there's the purposes-of-the-Copyright Act factor, which has been adopted by two Circuits. The Eighth Circuit has instructed its trial courts to consider "**factors such as** [...] **the purposes of the Copyright Act**." <u>Killer Joe Nev., LLC v. Doe</u>, 807 F.3d 908, 911 (8th Cir. 2015) (citing <u>Fogerty</u>, 510 U.S. at 534 n.19).

So has the Ninth Circuit. <u>Ets-Hokin</u>, 323 F.3d at 766 (9th Cir. 2003). Following <u>Fogerty</u>, the Ninth Circuit too has "added" a "purposes of the Copyright Act" factor. <u>Id.</u> And, like the Eighth Circuit, the Ninth Circuit also instructs lower courts within its Circuit to consider a purposes-of-the-Copyright-Act factor when deciding whether or not to award copyright fees pursuant to the Copyright Act's fee-shifting provision, 17 U.S.C. § 505.

Second, there's the "chilling effect" factor.  Id. The Ninth Circuit has repeatedly instructed courts to ask "whether the chilling effect of attorney's fees may be too great" upon impecunious creators.  Ets-Hokin, 323 F.3d at 766; see Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 675 (9th Cir. 2017).   This consideration stems from the Supreme Court's concern that Section 505 fee awards must respect the basic reality that copyright disputes implicate a diverse ecosystem of creators—running the "gamut from corporate behemoths to starving artists[.]" Fogerty, 510 U.S. at 524.

Indeed, in both of its cases on copyright fees, the Supreme Court has been particularly attuned to financial disparity and risk of ruinous fees when clarifying how copyright fees ought to work pursuant to Section 505.  In Kirtsaeng, the Court questioned whether a proposed approach to copyright fees would unwisely incentivize the "high-roller" copyright litigant at the expense of the "penny-ante type."  Kirtsaeng, 579 U.S. at 206.

Accordingly, "in recent years certain courts have treated a financial disparity between the parties as a factor to be weighed in determining whether an award should issue rather than simply the magnitude of such an award."  Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd., 2004 U.S. Dist. LEXIS 5648, *17 (S.D.N.Y. Apr. 6, 2004).

The Ninth Circuit in particular has instructed its trial courts to be mindful of the impact of fee-shifting, *i.e.*, of when "the chilling effect of attorney's fees may be too great" for copyright's impecunious creators.  Ets-Hokin, 323 F.3d at 766 (9th Cir. 2003); Perfect 10, 847 F.3d at 675 (9th Cir. 2017) ("chilling effect"); Glacier Films (USA), Inc. v. Turchin, 896 F.3d 1033, 1037 (9th Cir. 2018) ("chilling effect").

After all, copyright fee awards risk improperly chilling copyright's class of starving artists from litigating against copyright's corporate behemoths, absent consideration of financial disparities between the parties.  Thus, the Ninth Circuit has adopted a "chilling effect" factor when deciding whether or not to award copyright fees—and for good reason.

Below, Plaintiffs briefed the District Court on these additional factors.  1 Fee App. 147-151.  Yet, the District Court's fee order did not consider these additional factors when deciding whether to award copyright fees.[3] The District Court likely did not consider these factors because this Court has not yet provided guidance to the district courts within this Circuit as to whether the Tenth Circuit adopts or rejects these additional factors.

---

[3] Although the District Court did consider Plaintiff's financial state in deciding to *reduce* the fee award, Fee. Add. 6-7, the District Court never considered these additional factors when deciding the threshold issue of *whether* to award Copyright fees at all.

Thus, an important legal question regarding fees on appeal is whether this Court also recognizes these additional factors in deciding whether to award copyright fees, as the Eighth and Ninth Circuits do; or whether, to the contrary, this Court rejects those additional factors. Critically, this appears to be an open question of law in this Circuit.

Respectfully, this Court should clarify whether it endorses or rejects: (1) the Eighth and Ninth Circuit's purposes-of-the-Copyright-Act factor and (2) the Ninth Circuit's "chilling effect" factor. Such clarification from this Court would provide invaluable guidance to copyright litigants, to their counsel, and to the lower courts alike.

Should this Court decide to adopt these factors as part of its copyright-fees test, it need not apply them. Rather, it could simply vacate and remand the fee order without further consideration of the fee issues on appeal briefed in following sections. See Sections III.B-III.D.

Remanding after adopting the factors would permit the District Court to "pass judgment on the matter first"—*i.e.*, permitting the court of first instance to apply these additional factors in the first instance. See CGC Holding Co., LLC v. Hutchens, 974 F.3d 1201, 1216 (10th Cir. 2020). After all, this Court is a "court of review, not first view." Id.

* * * * *

33

Respectfully, this Court should adopt the purposes-of-the-Copyright-Act factor and the chilling effect factor, as other Circuits have, as part of its copyright-fees test.

>ii.    If adopted, the purposes-of-the-Copyright-Act factor weighs against an award of fees here.

In <u>Fogerty</u>, the Supreme Court made clear that the test used to determine copyright fees must be "faithful to the purposes of the Copyright Act[.]"  <u>Fogerty</u>, 510 U.S. at 534 n.19.

In light of <u>Fogerty</u>'s admonition that the purposes of the Copyright Act must be considered, multiple Courts of Appeals have decided to treat the purposes of the Copyright Act as an express factor to be considered in a fees analysis, so as to ensure that such statutory purposes are considered.  <u>See</u> <u>Glacier Films</u>, 896 F.3d at 1041 (9th Cir. 2018) (discussing the "purposes-of-the-Copyright-Act factor"); <u>Killer Joe</u>, 807 F.3d at 911 (8th Cir. 2015) ("factors such as [...] the purposes of the Copyright Act").

Since <u>Fogerty</u>, the Eighth Circuit has repeatedly instructed district courts within its Circuit to determine copyright fee awards "by considering factors such as […] the purposes of the Copyright Act."  <u>Killer Joe</u>, 807 F.3d at 911; <u>Pearson Educ. Inc. v. Almgren</u>, 685 F.3d 691, 696 (8th Cir. 2012) (same); <u>Action Tapes, Inc. v. Mattson</u>, 462 F.3d 1010, 1014 (8th Cir. 2006) (same).

So has the Ninth Circuit.  <u>Ets-Hokin</u>, 323 F.3d at 766 ("The Ninth Circuit has added [...] the purposes of the Copyright Act[.]"); <u>Glacier Films</u>, 896 F.3d at 1041 (discussing the "purposes-of-the-Copyright-Act factor"); <u>Perfect 10</u>, 847 F.3d at 675 (9th Cir. 2017) ("added [...] the purposes of the Copyright Act").

35

Indeed, some courts have called this consideration the "most important factor in determining whether to award fees under the Copyright Act[.]" Sofa Entm't, Inc. v. Dodger Prods., 709 F.3d 1273, 1280 (9th Cir. 2013); see also Berkla v. Corel Corp., 302 F.3d 909, 923 (9th Cir. 2002) ("Faithfulness to the purposes of the Copyright Act is, therefore, the pivotal criterion.").

Expressly considering this factor best operationalizes Fogerty's admonition that attorneys' fees must be "faithful to the purposes of the Copyright Act." See Fogerty, 510 U.S. at 535 n.19. After all, the "touchstone" of attorney fees under Section 505 is "whether imposition of attorney's fees will further the interests of the Copyright Act." Mitek Holdings, Inc. v. Arce Eng'g Co., 198 F.3d 840, 842-843 (11th Cir. 1999).

Here the purposes of the Copyright Act would be frustrated by a fee award. This case ultimately turned on open questions of copyright law within this Circuit regarding application of 17 U.S.C. §201(b)'s work-made-for-hire doctrine. And, critically, "copyright law benefits from the resulting clarification of the doctrine's boundaries." Lotus Dev. Corp. v. Borland Int'l Inc., 140 F.3d 70, 75 (1st Cir. 1998). Indeed, the Supreme Court has noted that, under the Copyright Act, "it is peculiarly important that the law's boundaries be demarcated as clearly as possible." Fogerty, 510 U.S. at 519 (emphasis added).

And, Section 505's fee-shifting exists so as to "ensure" that the boundaries of copyright law develop "as clearly as possible[.]"  Mitek Holdings, 198 F.3d at 842-843.  Thus, Section "505 should encourage the types of lawsuits that promote [the Copyright Act's] purposes"—including this one that developed the law by addressing and resolving open questions of ownership.  Kirtsaeng, 136 S. Ct. at 1986.  After all, developing the law by resolving "novel cases require a plaintiff to sue in the first place[.]"  Lotus, 140 F.3d at 75.

Simply put, lawsuits that raise open questions of copyright law are precisely the types of lawsuits that the purposes of the Copyright Act are to "encourage." Kirtsaeng, 136 S. Ct. at 1986.

In sum, given the limited case law on the questions raised in the merits appeal, this case has helped to clarify this Circuit's copyright law.  *That's* a fundamental purpose the fee-shifting statute is intended to encourage and, in turn, *that's* why this purposes-of-the-Copyright-Act factor weighs strongly against awarding fees here.

      iii.   <u>If adopted, the chilling-effect factor also weighs against an award of fees here.</u>

Also, courts should ensure that Section 505 is not improperly used to award fees that will have a "chilling effect" on smaller, impecunious artists. <u>Glacier Films</u>, 896 F.3d at 1037 (9th Cir. 2018). This chilling-effect factor is also crucial to ensuring that Section 505 copyright-fee awards are "faithful to the purposes of the Copyright Act." <u>See</u> <u>Fogerty</u>, 510 U.S. at 534 n.19. That's because courts have been mindful that, in the copyright context, fee awards can "impose an inequitable burden on an impecunious plaintiff." <u>Fantasy, Inc. v. Fogerty</u>, 94 F.3d 553, 560 (9th Cir. 1996).

Indeed, it's important to appreciate why considerations of the parties' relative financial strengths are important when deciding whether to award copyright fees under Section 505 of the Copyright Act. Such considerations are particularly important in the copyright context because parties which sue for copyright infringement can "run the gamut from corporate behemoths to starving artists." <u>Fogerty</u>, 510 U.S. at 524.

Therefore, courts evaluating copyright fee requests should consider whether awarding copyright fees would have a "chilling effect" on smaller artists—*i.e.*, on copyright's proverbial starving artist. <u>Glacier Films</u>, 896 F.3d at 1037. Consideration of stark financial disparities between parties, ensures that copyright fee awards will not improperly chill copyright's class of impecunious creators.

After all, "copyright law cannot serve its purpose if the cost of asserting a claim [...] becomes so draconian that only risk seekers and the extraordinarily wealthy can afford to protect their property rights." Lesley v. Spike TV, 2005 U.S. Dist. LEXIS 51305, *30-31 (C.D. Cal. 2005).

In fact, even relatively modest fee awards can improperly chill copyright's proverbial starving artists from asserting claims. Critically, even a relatively modest fee award (or the granting of some but not all of fees sought) can have a profound chilling effect that usurps the purposes of the Copyright Act. Indeed, even the $35,000 fee award here would have ample chilling effect on impecunious creators like Mr. Sepi for whom that fee award might well exceed an entire year's income.

Here, this chilling effect factor weighs strongly against fees. The relative financial status of the Parties is stark. Mr. Sepi is impecunious. Exhibit 1: Form 4. He is copyright's proverbial starving artist. Defendant, by contrast, is the textbook "corporate behemoth[,]" Fogerty, 510 U.S. at 524, with self-proclaimed "deep pockets[,]" Fee App. 57.

Indeed, it's undisputed that Defendant Netflix used numerous videos that Mr. Sepi personally filmed (and at least one of which Mr. Sepi indisputably owned) as part of its nationwide, for-profit streaming service.

To affirm an award of fees here would chill smaller creators' and impecunious copyright holders' willingness to assert their copyrights against large corporations.  What independent filmmaker or small-time creator would be willing or able to bring their copyright claims in court if, after hurdling access-to-law problems, they're left facing a high risk of substantial fees when litigating open questions of law?  That's the importance of this factor: it gives a level of security against an award of ruinous fees—and against the discouraging frequency of aggressive fee threats.

That's especially so in cases like the present which implicate unsettled questions of law regarding copyright ownership within this Circuit.  Critically, neither the District Court, Plaintiffs' counsel, nor Defendants' counsel found _any_ controlling Tenth Circuit authority regarding the determination of ownership pursuant to Section 201(b)'s work-made-for-hire doctrine.

That's important: "In situations such as this one, where the claimant presents a novel question of law, the risk of deterrence greatly outweighs its benefit." Lesley v. Spike TV, 2005 U.S. Dist. LEXIS 51305, *30-31.  And, failing to consider the stark financial disparities and the power asymmetry between the parties when choosing whether or not to award copyright fees, as the District Court failed to consider below, risks creating a profound "chilling effect" for smaller artists vis-a-vis large corporations using their works.

40

Respectfully, the District Court should have considered and weighed this factor, which ultimately goes to "whether an award against an impecunious party would create a chilling effect"—not just in deciding the amount but also in weighing whether any award would chill *others* from litigating their copyrights. See Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC, 925 F.3d 1140, 1149 (9th Cir. 2019).

**B.** **The District Court made legal errors and clear factual errors in holding that Plaintiffs' claims were objectively unreasonable.**

The first <u>Fogerty</u> factor asks "whether the losing party advanced an unreasonable" copyright claim or defense. <u>Kirtsaeng v. John Wiley & Sons, Inc.</u>, 579 U.S. 197, 207 (2016). Accordingly, this factor is often referred to as the "objective **un**reasonableness" factor. <u>E.g.</u>, <u>Palladium Music, Inc. v. EatSleepMusic, Inc.</u>, 398 F.3d 1193, 1200 (10th Cir. 2005). Other times, some courts refer to it as the "objective reasonableness" factor. <u>E.g.</u>, <u>Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.</u>, 2019 U.S. Dist. LEXIS 14632, *18 (D. Kan. Jan. 30, 2019).

Following <u>Kirtsaeng</u>, numerous courts have emphasized that this factor is to be awarded "substantial weight[.]" <u>Kirtsaeng</u>, 579 U.S. at 199[4]:

- "The Supreme Court recently […] placed extra, but not controlling, weight on the 'objective unreasonableness' factor[.]" <u>Leonard v. Stemtech Int'l, Inc.</u>, 834 F.3d 376, 403 (3rd Cir. 2016).

---

[4] Notably, this Court does not appear to have spoken on the issue of Section 505's copyright fee-shifting standard since the Supreme Court provided "additional guidance" in its <u>Kirtsaeng</u> decision. <u>See</u> <u>Kirtsaeng</u>, 579 U.S. at 203 (**2016**) (expressing the "need for some additional guidance respecting the application of §505"); <u>see also</u> <u>Stan Lee Media, Inc. v. Walt Disney Co.</u>, 2015 U.S. App. LEXIS 16055 (10th Cir. May 26, **2015**) (unpublished) (most recent copyright fee-shifting decision of this Court).

● "[A] court should give substantial weight to the objective reasonableness of the losing party's position." <u>Williams v. Gaye</u>, 885 F.3d 1150, 1177 (9th Cir. 2018) (citing <u>Kirtsaeng</u>).

● "[D]istrict courts should place substantial weight on objective reasonableness by assessing whether the losing party advanced an objectively unreasonable claim[.]" <u>Live Face On Web, LLC v. Integrity Sols. Grp., Inc.</u>, 421 F. Supp. 3d 1051, 1075 (D. Colo. 2019) (citing <u>Kirtsaeng</u>).

● The Supreme Court has directed district courts to give substantial weight to the objective reasonableness of the losing party's position[.]" <u>Energy Intelligence</u>, 2019 U.S. Dist. LEXIS 14632, at *18 (citing <u>Kirtsaeng</u>).

In short, <u>Kirstaeng</u> made clear that the objective reasonableness factor is to be afforded "substantial weight." <u>Kirtsaeng</u>, 579 U.S. at 199-200 ("The question presented here is whether a court [...] should give substantial weight to the objective reasonableness of the losing party's position. The answer [...] is yes—the court should."). Yet, the fee Order below nowhere acknowledged this crucial development in copyright law. <u>See generally</u> Fee. Add. 5-11 (nowhere discussing <u>Kirtsaeng</u>'s holding that courts should afford this objective-reasonableness factor "substantial weight").

Here, this factor weighs decisively against fees—and it was legal and clear factual error to hold otherwise below.

Critically, reasonableness is not a high bar.

Indeed, a reasonable litigation position is simply one that is "colorable and not baseless." Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 123 (8th Cir. 1987); Live Face on Web, LLC v. Renters Warehouse, LLC, 2019 U.S. Dist. LEXIS 37666, *7 (D. Minn. Mar. 8, 2019) (noting that "colorable arguments in support of its position" are reasonable ones).

And a claim is only objectively **un**reasonable if "the claim is clearly without merit or otherwise patently devoid of a legal or factual basis." Porto v. Guirgis, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009). Even "thin" claims are reasonable if they have a "rational, colorable basis[.]" Ferman v. Jenlis, Inc., 2016 U.S. Dist. LEXIS 173185, *5 (S.D. Iowa Dec. 5, 2016).

Indeed, the District Court properly noted that a claim is only objectively unreasonable "**when it has no legal or factual support**." Fee. App. 6 (citing Viva Video, Inc. v. Cabrera, 9 F. App'x 77, 80 (2d Cir. 2001) (unpublished)). Accordingly, the mere fact that a party lost "cannot establish his objective unreasonability." Seltzer v. Green Day, Inc., 725 F.3d 1170, 1181 (9th Cir. 2013). After all, "courts every day see [...] reasonable claims that come to nothing[.]" Kirtsaeng, 579 U.S. at 208.

Notably, the Supreme Court has clarified that courts must not "conflate[] two different questions"—namely the "issue of liability with that of reasonableness[.]" Kirtsaeng, 579 U.S. at 208.

44

And, given that the "course of litigation is rarely predictable," the Supreme Court has cautioned that "it is important that a district court resist the understandable temptation to engage in post hoc reasoning[.]"  Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-422 (1978) (a different fee-shifting context).  Applying "hindsight logic could discourage all but the most airtight claims"—giving a chilling effect on the enforcement of rights and the development of the law.  Id. at 422.

And, crucially here, a copyright claim is dramatically less likely to be found unreasonable where there is an "apparent **absence of binding authority** from the [Appellate Court] on the issue[.]"  Vivid Sites, LLC v. Millsap, 2017 U.S. Dist. LEXIS 46364, *18 (E.D. Mo. Mar. 29, 2017).  After all, fee decisions in copyright should "encourage the types of lawsuits" that develop copyright law.  Kirtsaeng, 579 U.S. at 204; Fogerty, 510 U.S. at 527 ("[I]t is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible.").

That's why courts have cautioned that Section 505's copyright-fee-shifting provision should not be misused to punish, chill, or discourage copyright claims implicating "unsettled question[s] of copyright law."  Lotus, 140 F.3d at 72; Meshwerks, 528 F.3d at 1270 n.11 (10th Cir. 2008) (that a copyright "suit presents a novel and consequential question" weighs against fees).

45

Here, Plaintiffs' copyright claims were not unreasonable. Thus, this first Fogerty weighs against fees-shifting. Ultimately, the District Court ruled against Plaintiff by adopting Defendants' positions on fair use and the work made for hire doctrine–implicating open questions of law within this Circuit and relying heavily on out-of-Circuit persuasive authority. Yet, the fact that Plaintiffs advanced reasonable arguments implicating open questions of copyright law within this Circuit should weigh heavily against a fee award here.

As an initial matter it is important to credit all the factual and legal support for Mr. Sepi's copyright claims.

First, Mr. Sepi obtained copyright registration from the United States Copyright Office for the eight videos in question. Merits Add. 7 (citing [Doc. Nos. 55-5 through 55-12]). Thus, Plaintiffs were the registered copyright holder of the eight videos in question. And, Defendants used these eight videos for nationwide, commercial streaming without permission from the registered copyright holder.

Second, there is no dispute that Mr. Sepi personally filmed the videos in question. Mr. Sepi testified that he "decided where to place the camera by figuring out the best viewpoint." Merits Add. 7. And, as the District Court discussed regarding the Funeral Film:

Mr. Sepi made at least some intentional decisions regarding angle, focus, and what to film. Just as these elements are sufficient to make a photograph of a

real world object copyrightable, they are sufficient to make a video of a real world event copyrightable. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 347 (1991); Merits Add. 26. Indeed, the Court rejected Defendants' argument that Mr. Sepi's Funeral Film was not original within the meaning of Copyright law. Merits Add. 26-27.

Third, there is no dispute that Defendants made copies and nationwide distributions/displays of verbatim portions of the eight videos. Where "duplication is literal or verbatim, then clearly substantial similarity results." 4 NIMMER ON COPYRIGHT § 13.03[A] (2019).

Yet, the District Court failed to credit Plaintiffs for any of this in its fee order. Indeed, the District Court largely ignored the objectively reasonable factual and legal bases for Plaintiffs' copyright claim. The District Court had ruled in Plaintiffs' favor on the originality dispute regarding the Funeral Film. On the element of copyright there is no serious question because Defendants plainly copied and distributed/displayed exact replicas of entire portions of the eight videos. On substantial similarity, there is no serious question given that the taken portions of the eight films are identical to the registered works. These present reasonable bases for a copyright claim.

But the District Court did not credit Plaintiff for issues he prevailed on or the facts or law that did support his prima facia case of copyright infringement.

47

Instead it faulted him for the two issues (work made for hire and fair use) on which he ultimately lost.

For seven of the eight works, the only serious hurdle to a successful copyright claim was the issue of ownership, which turned on the scope of work-made-for-hire doctrine (for which there is a dearth of on point authority from this Court). And, given that Mr. Sepi both personally filmed and successfully registered these works, his positions on ownership were far from unreasonable.

Thus, absent Defendant's successful work-made-for-hire argument and its successful affirmative defense of fair use, Plaintiffs–the registered copyright holders of the works in question–would have prevailed on textbook claims of copyright infringement.

And, it's worth stressing the unsettled and open nature of the scope of the work-made-for-hire doctrine here. The District Court's summary judgment order noted that the "Copyright Act does not define when a work is created within the scope of employment[.]" Merits Add. 13.

It next observed that "numerous courts have adopted the three-prong test expressed in Section 228 of the Restatement (Second) of Agency" to make that determination. Merits Add. 13. Specifically, the Court relied on authorities from the 2nd, 4th, 9th Circuits and also cited to the Middle District of Florida and Eastern District of New York adopting the Second Restatement's three-prong test

to determine whether a work was made within the scope of employment for purposes of determining the work made for hire issue.

Implicitly, this exclusive reliance on out-of-circuit persuasive authorities speaks to the "dearth of Tenth Circuit law" on the issue of work-made-for hire determinations.  Energy Intelligence Grp., 2019 U.S. Dist. LEXIS 14632 at *8. Indeed, some district courts within this Circuit have recognized: "In this Circuit, the boundaries of copyright law are fuzzy at best." Id. at *9.

As such, the summary judgment order itself readily demonstrates that neither the Copyright Act nor any binding appellate authority provided Plaintiffs with guidance as to how the work made for hire determination would turn out at the time of filing this suit.  Such, "absence of binding authority from the [Appellate Court] on the issue" should weigh against fees.  Vivid, 2017 U.S. Dist. LEXIS 46364 at *18.  After all, parties "who advance arguments of first impression should not be punished because the litigation could reasonably be seen as contributing to an informed discussion on the demarcation of copyright law." Id. at *9.

In short, Plaintiff's work-made-for-hire arguments were not baseless, irrational, or patently devoid of merit. To the contrary, Plaintiffs advanced colorable, albeit ultimately unsuccessful, arguments on open questions of law within this Circuit.

And, Plaintiff's copyright claim in the Funeral Film ultimately succumbed to Defendants' successful fair use defense. But, it's worth stressing that fair use presents a notoriously difficult to predict analysis. See 4 NIMMER ON COPYRIGHT § 13.05 (2022) ("Part of the difficulty in comprehending the limits of fair use may lie in the broad, and sometimes contradictory, manner in which the courts" have applied the doctrine."). Thus, it certainly was not unreasonable for Plaintiff to believe that Defendants' nationwide, commercial exploitation of his copyrighted video would not be held a fair use.

In sum, the District Court properly noted that "[a] claim is objectively unreasonable when it has "**no legal or factual support**." Fee Add. 6 (citing Viva, 9 F. App'x at 80). Yet, the District Court erred by ignoring ample factual and legal support for Plaintiff's copyright claims here. And, it failed to credit Plaintiff for the legal issues on which he prevailed (i.e. originality of the Funeral Film).

Instead, it applied the sort of "hindsight logic" that would "discourage all but the most airtight claims[.]" Christiansburg Garment, 434 U.S. at 421-422. Doing so disregards Kirtsaeng's admonition that the lower courts must not conflate merits with copyright fees determinations. And, it failed to appreciate and credit the unsettled and open nature of the legal questions which the District Court used to dispose of seven of the eight copyright claims (*i.e.*, the scope §201(b)'s work-

made-for-hire doctrine).   Accordingly, the District Court misapplied the objective unreasonable factor.

The District Court failed to credit the factual and legal bases of Plaintiffs' colorable copyright claims.   Accordingly, it misapplied the first <u>Fogerty</u> factor. Here, Plaintiffs' copyright claims were far from unreasonable.   Moreover, the fee order failed to afford "substantial weight" to this first <u>Fogerty</u> factor as commanded by the Supreme Court in <u>Kirtsaeng</u>. Properly applied this factor not only weighs against fees, but substantially weighs against fees.    Thus, the fee Order misapplied this first <u>Fogerty</u> factor and failed to afford this factor substantial weight, as required by <u>Kirtsaeng</u>. In light of those errors, this Court should respectfully reverse the fee award.

**C.    The other factors weigh against an award of fees as well.**

i.    <u>Frivolousness weighs against a fee factor.</u>

The next <u>Fogerty</u> factor is the frivolousness factor.

The District Court properly noted that frivolousness is a "somewhat higher" standard than unreasonableness because a claim is only frivolous where it is "clearly baseless, involving fantastic or delusional scenarios."  Fee Add. 6 (citing <u>Karmo v. Morgan Creek Ent. Grp.</u>, 2019 WL 13095278, *2 (C.D. Cal. June 28, 2019)).   And, the District Court correctly clarified that claims are not frivolous "merely because they are weak or ultimately prove to be unsuccessful." <u>Id.</u> (citing <u>Capitol Recs., LLC v. ReDigi Inc.</u>, 2022 WL 1046463, *5 (S.D.N.Y. Apr. 7, 2022)).

Accordingly, the District Court expressly held that Plaintiffs' copyright claim involving the Funeral Film was "**<u>not</u> rising to the level of frivolity**[.]"  Fee Add. 7.  Regarding the claims for the other seven videos, the District Court did not make a clear finding on the frivolousness factor.  Fee Add. 6-7 (nowhere clearly stating whether it found these claims to be frivolous or not).

Regardless, it's clear that none of Plaintiffs' copyright claims were frivolous as none involved fantastic or delusional scenarios.   Indeed, there are two independent reasons why Plaintiffs' copyright claims were plainly not frivolous.

52

First, as explained above, Plaintiffs' claims were objectively reasonable. Though ultimately unsuccessful, they had ample basis in fact and in law. Indeed, numerous elements of a colorable copyright claim were plainly satisfied. *A fortiori*, these reasonable claims were not frivolous.

Second, Plaintiffs' claims implicated open questions of law in this Circuit regarding the construal Section 201(b)'s work-made-for-hire doctrine. Claims involving open legal questions are rarely frivolous. Thus, the claims were not frivolous and this second <u>Fogerty</u> factor also weighs decisively against a fee award here.

Plaintiffs' copyright claims and arguments against Defendants' fair use and work-made-for-hire arguments were reasonable. <u>See</u> Section III.B, *supra*. Because they were reasonable, *a fortiori*, they were also not frivolous. <u>Markham Concepts, Inc. v. Hasbro, Inc.</u>, 2021 U.S. Dist. LEXIS 214365, *15 (D.R.I. Nov. 5, 2021) ("Because the case was not objectively unreasonable, it follows that it was not frivolous.").

A claim is not frivolous "merely because it is unsuccessful[.]" <u>Bisson-Dath v. Sony Computer Entm't Am. Inc.</u>, 2012 U.S. Dist. LEXIS 103159, *2 (N.D. Cal. July 24, 2012). Rather, a claim is only frivolous where that claim is "clearly baseless," and involves "fantastic or delusional scenarios." <u>Neitzke v. Williams</u>, 490 U.S. 319, 327-328 (1989) (construing different statute).

Put another way, a "case may be deemed frivolous only when the result is obvious or the arguments of error are wholly without merit."  Karam v. City of Burbank, 352 F.3d 1188, 1195 (9th Cir. 2003).

Here, there is no dispute that Plaintiff created video content in question. Merits Add. 4-5.  And there was no dispute that "Mr. Sepi obtained copyright registrations for these eight videos."  Merits Add. 7.  Defendants without permission or license from Plaintiffs exploited works that they created, by engaging in nationwide, commercial streaming of the eight works that Plaintiffs created.  That's ample basis for a colorable copyright claim.

And, though ultimately, Defendants' prevailed on an affirmative defense and application of Section 201(b)'s work-made-for-hire doctrine, Plaintiffs' claims do not become frivolous merely because they ultimately proved unsuccessful at summary judgment.

Second, and critically here, a case is "less likely to be considered frivolous when there is 'very little case law directly apposite.'"  Id.  As discussed above, see Section III.B, *supra*, there was a dearth of apposite binding case law construing the contours of the work-made-for-hire doctrine, Section 201(b), within this Circuit. Thus, there is simply no basis for asserting that the frivolousness factor supports an award of fees here.

The issues of work-made-for-hire raised undeveloped issues of copyright law in this Circuit, with little guidance from the scant case law on point. Such issues of first impression heavily weigh against frivolity.  Lifshitz v. Walter Drake & Sons, Inc., 806 F.2d 1426, 1435 (9th Cir. 1986) (finding an appeal was not frivolous given that it raised "substantial questions of first impression in this circuit[.]").

Indeed, in a variety of legal contexts, various courts have indicated that it's typically improper to call claims implicating open questions of law frivolous:

- Aamot v. Peterson, 2020 U.S. Dist. LEXIS 152123, *7 (Dist. Minn. Aug. 21, 2020) ("Making a challenge to an open question of law cannot be said to be frivolous or objectively unreasonable.") (Deciding a Section 505 copyright fee award)

- Jones v. Sternheimer, 387 F. App'x 366, 369 (4th Cir. 2010) ("[B]ecause this issue is an open question in this circuit, we find that the district court abused its discretion in summarily dismissing Jones's action as frivolous) (involving claims under the Family Medical Leave Act).

- Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151, 158 (3rd Cir. 2001) ("Other factors that courts have considered in determining if an action was frivolous include whether the question in issue was one of first impression[.]") (reviewing a fee award under §1988).

Given the absence of clear governing authority to demarcate the contours of the work-made-for-hire doctrine within this Circuit, Plaintiffs' claims (involving videos that he personally filmed and edited) were not frivolous.

Plaintiffs' claims were not the type that were not "clearly baseless" and did not involve "fantastic or delusional scenarios." <u>Neitzke</u>, 490 U.S. at 327-238. Rather they were reasonable claims, with factual and legal support on numerous elements, that ultimately failed because of the District Court's construction and application of open questions of law in this Circuit. Accordingly, to call Plaintiffs' "claims frivolous is to distort measurably the meaning of frivolousness both in common and legal parlance." <u>Id</u>. at 328-329.

* * * * *

Plaintiffs' copyright claims were far from frivolous. This second <u>Fogerty</u> factor also weighs decisively against a copyright fee award.

56

ii.   <u>Motivation weighs in favor a fee award but only slightly because of the other facts here.</u>

The third <u>Fogerty</u> factor examines the losing parties' "motivation." <u>Palladium Music, Inc. v. EatSleepMusic, Inc.</u>, 398 F.3d 1193, 1200 (10th Cir. 2005) (discussing the <u>Fogerty</u> factors).

Below, the District Court found that certain "conduct indicates that Plaintiffs' motivation for bringing the lawsuit was improper." Fee Add. 8. Specifically, the Court found that "Plaintiffs advanced a theory of the case that was contradicted by Mr. Sepi's prior sworn testimony" in a 2016 deposition from a separate case. <u>Id.</u> The District Court believed that "Plaintiffs failed to offer a plausible explanation for the abrupt change in Mr. Sepi's testimony." Fee Add. 8.

Given the standard of review (i.e. abuse of discretion), Plaintiff does not challenge the Court's finding that the motivation factor weighs in favor of fees. After all, the District Court was certainly within its discretion to draw the conclusions that it did regarding this factor.

Plaintiffs do, however, stress that this factor should **<u>not</u>** weigh heavily in favor of fees here. Importantly, two points bear clarification and emphasis.

<u>First</u>, even without reliance on the 2021 Sepi Deposition, Plaintiffs' ownership claims remain colorable. Merits Opening Br. 63-74; Merits Reply Br. 32-36. There's no dispute that Mr. Sepi did in fact create the videos in question. Dkt 57 at 4-5.  There is no dispute that "Mr. Sepi obtained copyright registrations

57

for these eight videos" from the United States Copyright Office. Merits Add. 7; see also 8 Merits App. 44-60 (copyright registrations). And, there's no serious dispute that Mr. Sepi is the copyright owner of the eighth video (i.e. the Funeral Film). The District Court certainly never ruled that he wasn't.

So, although the District Court took understandable umbrage at perceived inconsistencies between Mr. Sepi's 2016 and 2021 depositions, the fact remains that even without the 2021 deposition, Mr. Sepi had a basis for believing he had copyright ownership in the eight videos.

While the District Court was within its discretion to find the improper motivation factor weighed in favor of fees given the inconsistent testimonies, it should not weigh heavily in favor of fees. The weight of any improper motivation should be mitigated by the fact that, at the end of the day, this case involved the registered copyright holder of eight videos bringing suit for unauthorized use of those videos.

Second, a careful review of Plaintiff Sepi's 2021 deposition reveals that Mr. Sepi did provide an explanation for the inconsistencies and tensions between his 2016 deposition (in a separate case) and his 2021 deposition in the present case. Mr. Sepi explained that at the time of the 2016 deposition he feared for his safety and well-being while living at the Tiger King park. 5 App. 140:11-13.

- "I was trying to get out of there with my life intact, without any problems." 5 Merits App. 132 (Dkt. 55-1 at 119).

- "I was fearing for my life and the safety of the animals[.]" 5 Merits App 134-135 (Dkt. 55-1 at 121-122).

- "Like I said, I didn't know what these individuals may be capable of." 5 Merits App. 141-142 (Dkt. 55-1 at 128-129).

- "Q. Did Jeff Lowe threaten you? A. Yep." 5 Merits App. 140 (Dkt. 55-1 at 126).

Mr. Sepi testified that certain statements made in the 2016 deposition arose from his concern for his safety while living at the park with Mr. Maldonado-Passage. He was afraid of saying something that would anger either Mr. Maldonado or Mr. Lowe, both of whom he felt were dangerous and unpredictable persons. Notably, one of those persons, Mr. Maldonado has since been criminally sentenced for conspiracy to commit murder. United States v. Maldonado-Passage, 56 F.4th 830, 834 (10th Cir. 2022) ("In 2018, Joseph "Tiger King" Maldonado-Passage was indicted on several counts, including two murder-for-hire schemes in violation of 18 U.S.C. § 1958(a).").

Thus, review of the 2021 deposition reveals that Mr. Sepi did provide an explanation for the change between his testimonies. This too should mitigate the weight of this factor here.

59

****

While the District Court was within its discretion to find improper motive due to inconsistent testimonies, this factor should not weigh heavily in favor of fees here.

Even discounting the 2021 deposition, Mr. Sepi still had good reason to believe that he was the copyright owner for all eight videos.  The ownership of the eighth video has never been seriously challenged.  And, at the end of the day, this case represents a typical copyright case: the registered copyright holder of the videos brought suit for unauthorized use of those videos.  8 Merits App. 44-60 (copyright registrations).  Whatever improper motive the District Court found, it was an ancillary feature of an otherwise textbook copyright dispute between an unauthorized user and the registered copyright holder.

      iii.    <u>Compensation and deterrence weigh against a fee award as well.</u>

The final <u>Fogerty</u> factor is "the need in **particular circumstances** to advance considerations of compensation and deterrence." <u>Kirtsaeng v. John Wiley & Sons, Inc.</u>, 579 U.S. 197, 202 (2016).

Below, the District Court found this factor favored a fee award. The District Court reasoned that "[a]warding attorney's fees to the prevailing party where the claims advanced were objectively unreasonable can serve to deter similarly situated plaintiffs from bringing meritless claims." Fee Add. 8 (citing <u>Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.</u>, 27 F.4th 313, 326 (5th Cir. 2022)).

As an initial matter, the District Court's reliance on the Fifth Circuit's <u>Bell</u> decision is profoundly misplaced and highly distinguishable.  In <u>Bell</u>, the Fifth Circuit stressed that plaintiff's "long history of suing public institutions and nonprofit organizations over de minimis uses of his work." <u>Bell</u>, 27 F.4th at 326. That "long history" of numerous lawsuits presented a *particular* circumstance justifying deterrence. Indeed, in <u>Bell</u>, the Fifth Circuit expressly noted that "**[t]aking these cases into account**, the district court reasonably concluded that Bell is a serial litigant[.]" <u>Id.</u>

Here, Plaintiffs have no such litigation history. Plaintiffs are not "serial litigants" as was the animating deterrence rationale in the <u>Bell</u> fee award. To wit, this is Mr. Sepi's first and only copyright lawsuit.  Accordingly, <u>Bell</u> is readily

distinguishable and its serial litigant rationale plainly does not provide a basis for deterrence here.

Second, the District Court's deterrence rationale relied heavily on its belief that it needed to deter "unreasonable" claims. Fee Add. 6 ("This award is sufficient to deter the pursuit of objectively unreasonable claims[.]"). But the District Court was wrong in finding the claims, though unsuccessful, to also be unreasonable. See Section III.B, *supra*. As explained above, there was ample legal and factual basis to the claims, which readily made out a prima facie case of copyright infringement.

At core, this case involved a registered copyright holder bringing suit for the unauthorized use of those registered works, by a Defendant making nationwide, commercial exploitations of those registered works. That's a textbook copyright case. Accordingly, the District Court's perceived need to deter unreasonable claims was misplaced here.

Third, the District Court overlooked that a plaintiff raising issues implicating open or unsettled questions of law should not be deterred using Section 505 fee-shifting.

As the Supreme Court made clear in Fogerty: "Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, **it is peculiarly important that the boundaries of copyright law**

**be demarcated as clearly as possible.**" <u>Fogerty</u>, 510 U.S. at 527.  Thus, it's important that courts be mindful that imposing copyright fees risks chilling cases that lead to the "clear demarcation of the boundaries of copyright law." <u>Hofheinz v. AMC Prods.</u>, 2003 U.S. Dist. LEXIS 16940, \*17 (E.D.N.Y. Sept. 1, 2003).

Imposing fees in such cases improperly deters the very cases needed to achieve those foundational purposes of clarifying the boundaries of copyright law. After all, developing the law by resolving "novel cases require a plaintiff to sue in the first place[.]" <u>Lotus</u>, 140 F.3d at 75; <u>Action Tapes</u>, 462 F.3d at 1014 (affirming the denial of copyright fees against plaintiff raising "important and novel issues under [a] seldom-litigated" section of the Copyright Act.)

Here, the District Court failed to credit the open and unsettled nature of the legal grounds used to resolve this dispute.  Fee Add. 7 n.3 ("Plaintiffs argue that […] the law regarding what constitutes creation within the scope of employment is not well-developed in the Tenth Circuit. The Court does not agree[.]")

Yet, critically, neither the District Court, defense counsel, or plaintiffs counsel found any Tenth Circuit authority construing Section 201(b)'s work-made-for-hire doctrine, *i.e.*, the doctrine the District Court used to resolve the authorship question.  Merits Add. 13 (discussing how "numerous courts" have applied the work-made-for-hire doctrine but not citing Tenth Circuit law).

Plaintiffs submit that the lack of citable decisions from this Court on how to construe and apply Section 201(b)'s work-made-for-hire doctrine readily demonstrates the open nature of this area of law in this Circuit.

Accordingly, this case presents a copyright dispute wading into open or unsettled questions of law in this Circuit regarding the scope of the work-made-for-hire doctrine. Thus, the present suit helps clarify how to demarcate between what copyrights an employee owns and what copyrights an employer owns under 17 U.S.C. 201(b)'s work-made-for-hire-doctrine. Achieving clarity on that important question is of outsized public benefit. Fogerty 510 U.S. at 527. As Fogerty makes clear, that's a good thing in copyright law. And, certainly not something that needs to be discouraged or deterred as the District Court mistakenly concluded.

* * * * *

This case presents no particular circumstances necessitating deterrence. Plaintiffs are not serial litigants, contrary to the District Court's reliance on Bell's deterrence rationale. Plaintiffs, possessing copyright registrations in the works, advanced reasonable arguments for ownership on open questions of law regarding Section 201(b)'s work-made-for-hire doctrine.

Thus, under <u>Fogerty</u>, Mr. Sepi's lawsuit benefits the general public and advances Copyright law's purposes by bringing clarity to the, at present, obscurely demarcated boundaries of ownership pursuant to work-made-for-hire doctrine. Using Section 505 fees to discourage such a copyright suit is not in keeping with <u>Fogerty</u> and frustrates the foundational purposes of Copyright law

### D. Balancing of the factors weigh against a fee award in total.

As explained above, three of the four <u>Fogerty</u> factors weigh against copyright fee-shifting here. See Sections III.B-C, *supra*. Importantly, the objective reasonableness factor—a factor which the Supreme Court has clarified should be given "substantial weight"—is amongst the three factors that weigh against Section 505 fee-shifting. <u>See</u> <u>Kirtsaeng,</u> 579 U.S. at 199. Accordingly, because three of the four <u>Fogerty</u> factors, including the weightiest factor, weigh against fee-shifting, copyright fees should not have been awarded under Section 505.

Beyond the four <u>Fogerty</u> factors, other Courts of Appeals have applied two additional factors when determining fee-shifting decisions under Section 505. <u>See</u> Section III.A, *supra*. Specifically, the Eighth and Ninth Circuit have applied a purposes-of-the-Copyright-Act factor. And, the Ninth Circuit has applied a "chilling effects" factor. These additional factors are meant to ensure compliance with the Supreme Court's emphasis on "the purposes of the Copyright Act" in <u>Fogerty</u> and the Supreme Court's "additional guidance" about how to apply Section 505 in <u>Kirtsaeng</u>. <u>Fogerty</u>, 510 U.S. at 534 n.19; <u>Kirtsaeng</u>, 579 U.S. at 203.

If those additional factors were applied here, both would weigh against fee-shifting.

Accordingly, because both additional factors also weigh against fees, copyright fee-shifting is all the more improper. Considering these additional factors would bring the calculus to five factors against fees, with only one factor in favor. Thus, the Section 505 fee-shifting factors make clear that a copyright fee award was improper here.

* * * * *

Respectfully, because the majority of the <u>Fogerty</u> factors, including one afforded "substantial weight", weigh against a fee award, it was an abuse of discretion to award fees. Accordingly, this Court should reverse the fee award because three of the four <u>Fogerty</u> factors weigh against fees.

In the alternative, this Court is respectfully asked to clarify whether it adopts additional factors (adopted by the Eighth and Ninth Circuits), and, if so, to vacate and remand the fee-shifting order to permit the District Court to apply these additional factors in the first instance.

## IV.   THE DISTRICT COURT PROPERLY CONCLUDED THAT DEFENDANTS' FEE REQUEST WAS EXCESSIVE, SO THE AMOUNT AWARDED IS NOT AT ISSUE ON APPEAL.

As an important clarification, the copyright-fee issues raised in this appeal in Section III, *supra*, pertain exclusively to the threshold question of *whether* copyright fees may be awarded at all under <u>Fogerty</u> and <u>Kirtsaeng</u>—and not to the follow-on decision regarding the *amount* of fees once a decision to award fees is properly reached.

This follow-on question on the *amount* of fees is *not* raised here on appeal. It's not a question raised here because the District Court was correct to reduce Defendants' fee request as excessive.   Yet, discussing the follow-on issue regarding the *amount* of fees shows the significance of the threshold issues, especially in the copyright context, in two ways:

1. Clearly distinguishing between the issue of whether to award fees and the issue of the amount helps to distinguish copyright fee-shifting from other more familiar fee-shifting contexts, such as civil-rights fees.

2. Discussing the amount also demonstrates the importance of taking the threshold issues seriously because prevailing parties will often seek ruinous and excessive amounts.

## CONCLUSION

If this Court reverses in the related merits appeal, No. 22-6086, then this Court should simply vacate the District Court's fee order and its costs order. <u>See</u> Section I, *supra*.

In the alternative, this Court should reverse the taxation of video-deposition expenses as costs, <u>see</u> Section II, *supra*, and reverse the fee order as well, <u>see</u> Section III, *supra*.[5]

Date: March 2, 2023                    Respectfully submitted,

                                        */s/ Andrew Grim*
                                        Andrew Grimm
                                        DIGITAL JUSTICE FOUNDATION
                                        15287 Pepperwood Drive
                                        Omaha, Nebraska 68154
                                        (531) 210-2381
                                        Andrew@DigitalJusticeFoundation.org

                                        *Attorney for Appellants*

---

5 On fees, this Court could alternatively clarify that this Circuit will adopt and apply the purposes-of-the-Copyright-Act factor and/or the chilling-effect factor. <u>See</u> Section III.B, *supra*. Then, given that those factors were not applied below in deciding *whether* to award fees (as distinct from *how much* to award), this Court could remand for consideration and weighing of these factors by the District Court in the first instance.

## ORAL-ARGUMENT STATEMENT

Given the novel legal questions regarding costs and fees raised—and their significance beyond the Parties—the undersigned respectfully requests five additional minutes of argument time per side to present these issues.  These novel legal issues are briefly outlined below.

On costs, a 1997 decision in this Circuit recognized that the costs statute "does **not explicitly** provide for the taxation of costs associated with video depositions"—but nonetheless permitted such taxation on the grounds that the statute "**implicitly** permits" it.  Tilton v. Capital Cities/ABC, 115 F.3d 1471, 1477 (10th Cir. 1997).  A 2019 Supreme Court case has since required "**explicit statutory authority**" to award a category of costs.  Rimini St., Inc. v. Oracle USA, Inc., 139 S. Ct. 873, 878 (2019).

The novel legal question on costs is whether and how the 2019 Supreme Court decision affects that 1997 holding.

There is also a novel legal question on fees.  On fees, the Supreme Court has adopted a "non-exclusive" list of factors to apply in deciding whether to award copyright fees.  Ets-Hokin v. Skyy Spirits, Inc., 323 F.3d 763, 766 (9th Cir. 2003) (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)).

Other Courts of Appeals have adopted additional factors beyond the non-exclusive factors adopted by the Supreme Court. <u>E.g.</u>, <u>id.</u>  The novel legal question is whether this Circuit also adopts these additional fee factors.

* * * * *

A few minutes of additional oral-argument time, five per side, would be valuable insofar as that additional time permits a live colloquy between the bench and bar to clarify issues, refine theories, address questions, *etc.*, on novel legal questions about copyright fees and costs.


Date: March 2, 2023                    Respectfully submitted,

                                       */s/ Andrew Grimm*
                                       Andrew Grimm

                                       *Attorney for Appellants*

## CERTIFICATE OF COMPLIANCE

This Brief contains **12,384** words, excluding the portions excluded from the wordcount by rule.

This Brief was prepared in Microsoft Word using Times New Roman 14-point font.

Date: March 2, 2023                    Respectfully submitted,

                                       */s/ Andrew Grimm*
                                       Andrew Grimm

                                       *Attorney for Appellants*

## ADDENDUM OF ORDERS & OPINIONS

The opinions of the District Court—and its judgments—pertinent to these fee-and-costs appeals are included below:

| ADDENDUM CONTENTS | | | |
|---|---|---|---|
| *ECF* | *Date* | *Description* | *Page* |
| 81 | Sept. 28, 2022 | Clerk Order Granting in Part and Denying in Part Defendants' Costs | Fee Add. 1 |
| 82 | Sept. 30, 2022 | District Court Order Granting in Part and Denying in Part Defendants' Fees | Fee Add. 5 |
| 93 | Nov. 14, 2022 | District Court Order Granting in Part and Denying in Part Defendants' Costs | Fee Add. 12 |

AO 133   (Rev. 12/09) Bill of Costs

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

WHYTE MONKEE PRODUCTIONS, LLC, et al.　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　v.　　　　　　　　　　　　)　　Case No.: 5:20-CV-00933-D
　　　　NETFLIX, INC., et al.　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)

## BILL OF COSTS

Judgment having been entered in the above entitled action on ___04/27/2022___ against ___Plaintiffs___,
　　　　　　　　　　　　　　　　　　　　　　　　　　Date
the Clerk is requested to tax the following as costs:　　(extension to June 1, 2022 granted ECF 60)

| | |
|---|---|
| Fees of the Clerk . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $　　　　0.00 |
| Fees for service of summons and subpoena . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0.00 |
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case . . . . . . | $2,490.95  ~~9,622.30~~ |
| Fees and disbursements for printing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0.00 |
| Fees for witnesses *(itemize on page two)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0.00 |
| Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $　138.40  ~~1,861.99~~ |
| Docket fees under 28 U.S.C. 1923 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0.00 |
| Costs as shown on Mandate of Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0.00 |
| Compensation of court-appointed experts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0.00 |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 . . . . . | 0.00 |
| Other costs *(please itemize)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 0.00 |
| TOTAL | $　~~11,484.29~~ |

SPECIAL NOTE: Attach to your bill an itemization and documentation for requested costs in all categories.　$2,629.35

| **Declaration** |
|---|

　　I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this bill has been served on all parties in the following manner:

　[✓]　Electronic service　　　　　　[ ]　First class mail, postage prepaid

　[ ]　Other:　_____

　s/ Attorney:　　/s/ Emily F. Evitt_____

　　　Name of Attorney:　Emily F. Evitt_____

For:　　Defendants Netflix, Inc. and Royal Goode Productions LLC　　　Date:　　06/01/2022
　　　　　　　　*Name of Claiming Party*

| **Taxation of Costs** |
|---|

Costs are taxed in the amount of　$2,629.35_____ and included in the judgment.

Carmelita Reeder Shinn_____　　By: *Carmelita Reeder Shinn*　　9/28/22
　　　　*Clerk of Court*　　　　　　　　　　　　　*Deputy Clerk*　　　　　　*Date*

Fee Add. 1

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

WHYTE MONKEE PRODUCTIONS, )
LLC, et al.,                )
                            )
              Plaintiffs,   )
                            )
v.                          )          Case No. CIV-20-933-D
                            )
NETFLIX, INC., et al.,      )
                            )
              Defendants.   )

## SUPPLEMENT TO DECISION ON BILL OF COSTS

On June 1, 2022, defendants filed its Bill of Costs (Doc. No. 64) seeking

$11,484.20 in costs.   Plaintiffs filed their response on June 8, 2022, objecting to

transcript and exemplification costs sought by defendants.   The undersigned held

a hearing on September 1, 2022.

In ruling on defendant's request for costs, the undersigned is mindful of the

Supreme Court's pronouncement that:

> [F]ederal courts are limited to awarding the costs specified in [28
> U.S.C.] §§ 1821 and 1920.   If, for particular kinds of cases, Congress
> wants to authorize awards of expenses beyond the six categories
> specified in the general costs statute, Congress may do so. . . .   But
> absent such express authority, courts may not award litigation
> expenses that are not specified in §§ 1821 and 1920.

Rimini Street, Inc. v. Oracle USA, Inc., 139 S. Ct. 873, 877 (2019).   Consistent

with this admonition, the undersigned has reviewed defendants' Bill of Costs, the

1

Fee Add. 2

parties' briefs, and the arguments made at the costs hearing.   Based on that review, the undersigned makes the following rulings on plaintiff's objections.

The undersigned expresses no opinion on plaintiffs' request that the court exercise its discretion to deny costs; this is a matter solely for the presiding judge to determine.   Plaintiffs' objection to the costs incurred for videography and synchronization is, however, sustained.   Defendants did not demonstrate the necessity of obtaining a video of the deposition of Timothy Sepi, much less the cost to synchronize the video with the transcript.   Defendants did not submit the video into evidence, and the Court was able to determine that Sepi had repudiated prior sworn testimony from the written transcript alone.   Plaintiffs' objection to the charges associated with the online exhibit-sharing platform Veritext is likewise sustained.[1]   While using this platform was convenient for the parties, it does not constitute "[f]ees for printed or electronically recorded transcripts", 28 U.S.C. § 1920(2), nor were the services akin to a reporter's scanning physical copies of exhibits, which is compensable.   Rather, the Veritext services are similar to litigation support services which are not recoverable under the costs statute. Likewise, the undersigned disallows costs for attendance fees, surcharges for extended hours, and "Veritext Virtual Primary Participants"[2] as these are not

---

[1]The costs for "Veritext Exhibit Package (ACE)", "Exhibit Share", and "Exhibit Share Addl Presenter", totaling $1,023.50, are thus disallowed.

[2]This fee is not explained.

2

Fee Add. 3

transcript fees.   *See* Hetronic Int'l, Inc. v. Hetronic Germany GMBH, Case No. CIV-14-650-F, ord. at 1-2 (filed Aug. 24, 2020) (Doc. No. 490), *aff'd* Hetronic Int'l, Inc. v. Hetronic Germany GMBH, Case No. CIV-14-650-F, ord. at 5 (W.D. Okla.) (filed Jan. 12, 2021) (Doc. No. 495), *aff'd* Hetronic Int'l, Inc. v. Hetronic Germany GMBH, Case No. 21-6019 (10th Cir.) (filed Oct. 29, 2021).   Costs for rough drafts are also disallowed as defendants did not demonstrate the necessity of obtaining rough drafts in addition to the final printed transcript.[3]   Finally, the undersigned sustains plaintiffs' objection to research and retrieval fees charged by the Copyright Office.   Under 28 U.S.C. § 1920(4) "the costs of making copies of any materials where the copies are necessarily obtained for use in the case" are taxable.   Research and retrieval fees, however, are not copying costs.[4]   The cost to copy the material was $36.00 and is therefore allowed.   Doc. No. 64-4 at 9.   In addition, the undersigned awards defendants $102.40 for the costs associated with exhibits attached to the transcripts.

Entered this 28th day of September, 2022.

Carmelita Reeder Shinn
Carmelita Reeder Shinn
Clerk of Court

---

[3]Defendants correctly did not request to be reimbursed for realtime services, litigation package, witness read and sign services, or electronic delivery and handling.

[4]Defendants did not explain what a "litigation statement" is but the cost associated with it appears to be a retrieval fee, which is not compensable.   *See* Foss v. Spencer Brewery, 2019 WL 3387298 at *2 (D. Mass. July 26, 2019).

Fee Add. 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

WHYTE MONKEE PRODUCTIONS, )
LLC, and )
TIMOTHY SEPI, )
 )
  Plaintiffs, )
 )
v. ) Case No. CIV-20-933-D
 )
NETFLIX, INC., and )
ROYAL GOODE PRODUCTIONS, LLC, )
 )
  Defendants. )

## ORDER

Plaintiffs initiated this copyright infringement action claiming that Defendants unlawfully used clips from eight videos owned by Plaintiffs. The Court granted summary judgment to Defendants, finding that seven of the videos were not owned by Plaintiffs and the use of the remaining video was a fair use.[1] Defendants now move for an award of attorney's fees in the amount of $170,705.00 as the prevailing party under the Copyright Act [Doc. No. 65]. Plaintiffs have filed a response in opposition [Doc. No. 77] and Defendants have replied [Doc. No. 78].

"Section 505 of the Copyright Act provides that a district court 'may ... award a reasonable attorney's fee to the prevailing party.'" *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 199 (2016) (quoting 17 U.S.C. § 505). In determining whether to award fees

---

[1] Although Plaintiffs have appealed the judgment, this Court retains jurisdiction over Defendants' application for attorney's fees. *Bell v. Bd. Of Cnty. Comm'rs Of Jefferson Cnty.*, 451 F.3d 1097, 1101 n. 2 (10th Cir. 2006).

Fee Add. 5

under this section, courts must make a "particularized, case-by-case assessment" and "may not 'award[ ] attorney's fees as a matter of course.'" *Id.* at 202 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)) (alteration in *Kirtsaeng*). Although there is no "precise rule or formula for awarding fees," the Supreme Court has suggested "several, nonexclusive factors" that may be used to guide a court's discretion: "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* (quotation marks omitted) (alteration in original). When applying these factors, courts must treat "prevailing plaintiffs and defendants in an evenhanded manner" and must remain "faithful to the purposes of the Copyright Act." *Fogerty*, 510 U.S. at 534, n. 19. "The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty*, 510 U.S. at 524.

Defendants assert that a fee award is appropriate because Plaintiffs' copyright infringement claim was frivolous and objectively unreasonable. A claim is objectively unreasonable when it has "no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001) (unpublished). Frivolousness is a "somewhat higher" standard and describes claims that are "clearly baseless, involving fantastic or delusional scenarios." *Karmo v. Morgan Creek Ent. Grp.*, No. CV 18-9148 PA (AGRX), 2019 WL 13095278, at *2 (C.D. Cal. June 28, 2019) (citations and quotation marks omitted). Claims are not frivolous or objectively unreasonable merely because they are weak or ultimately prove to be unsuccessful. *Capitol Recs., LLC v. ReDigi Inc.,* No. 1:12-CV-95 (RJS), 2022 WL 1046463, at *5 (S.D.N.Y. Apr. 7, 2022); *see also Kirtsaeng*, 579 U.S. at 207.

Fee Add. 6

The primary issue in this case was whether seven of the videos were created within the scope of Plaintiff Sepi's employment. If so, ownership of the videos would vest in his employer pursuant to § 201(b) of the Copyright Act and he would have no grounds to pursue a copyright infringement claim. Prior to commencing this lawsuit, Mr. Sepi gave deposition testimony in an unrelated proceeding where he denied any knowledge of the formation of Whyte Monkee Productions, LLC and stated that he performed videography work as part of his employment.[2] When giving deposition testimony in this matter, Mr. Sepi initially affirmed his prior sworn testimony, but later denied that he was employed as a videographer and claimed that he committed perjury at his prior deposition. In granting summary judgment to Defendants, the Court found that this testimony could be appropriately excluded under the sham affidavit doctrine as an attempt to create a sham issue of fact. Plaintiffs' reliance on sham testimony indicates that their claim was lacking in factual support and objectively unreasonable.[3]

The remaining issue in the case was whether Defendants' use of a video created by Mr. Sepi after his employment ended was a fair use. Although not rising to the level of frivolity, this claim was also lacking in legal and factual support. Plaintiffs' summary

---

[2] The Court presumes the reader's familiarity with the facts of this case, which are set out more fully in the Court's April 27, 2022 order [Doc. No. 57].

[3] Plaintiffs argue that their claim is neither frivolous nor objectively unreasonable because the law regarding what constitutes creation within the scope of employment is not well-developed in the Tenth Circuit. The Court does not agree that Tenth Circuit law is as murky as Plaintiffs assert, but even so, Plaintiffs' admissions that he was hired as a cameraman and his reliance on sham testimony indicates that the claim was lacking in factual support.

judgment briefing addressed the video at issue in only the most perfunctory manner and all of the fair use factors tipped decidedly in Defendants' favor.

Defendants further argue that attorney's fees are warranted because Plaintiffs pursued this lawsuit in bad faith. A plaintiff's improper motive in pursuing an action or their bad faith litigation conduct can weigh in favor of awarding fees to a prevailing defendant. *Karmo*, 2019 WL 13095278, at *3. Here, Plaintiffs advanced a theory of the case that was contradicted by Mr. Sepi's prior sworn testimony and that was inconsistent with his actions prior to the filing of the lawsuit. Moreover, Plaintiffs failed to offer a plausible explanation for the abrupt change in Mr. Sepi's testimony. This conduct indicates that Plaintiffs motivation for bringing the lawsuit was improper.

Finally, Defendants argue that considerations of deterrence and compensation warrant an attorney fee award in this case. Awarding attorney's fees to the prevailing party where the claims advanced were objectively unreasonable can serve to deter similarly situated plaintiffs from bringing meritless claims. *See Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 326 (5th Cir. 2022) (finding that "[a]ttorney's fees were thus an appropriate deterrent, both with respect to [plaintiff] and other copyright holders who might consider a similar business model of litigation."). A fee award also incentivizes "a person defending against a patently meritless copyright claim…to keep fighting, no matter that attorney's fees in a protracted suit might be as or more costly than a settlement." *Kirtsaeng*, 579 U.S. at 205. Defendants were plainly required to spend significant time and financial resources litigating this lawsuit, and there is a need to deter other plaintiffs from relying on sham testimony to advance unfounded claims.

4

However, the Court must also be mindful that "the aims of the statute are compensation and deterrence where appropriate, but not ruination." *Lieb v. Topstone Indus., Inc*., 788 F.2d 151, 156 (3d Cir. 1986). Thus, in evaluating a request for attorney's fees, "the relative financial strength of the parties is a valid consideration." *Id.*; *see also Karmo*, 2019 WL 13095278, at *4 ("The Court may also consider 'whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff.'"); *Quaglia v. Bravo Networks*, No. CIV.A.04-10460-RWZ, 2006 WL 2691686, at *2 (D. Mass. Sept. 19, 2006) ("It is well-established that courts may consider a party's ability to pay sanctions imposed under Section 505 of the 1976 Copyright Act."). Particularly where the sum requested is large, it is appropriate to consider whether it is "excessive in light of the plaintiff's resources." *Lieb*, 788 F.2d at 156.

Plaintiffs contend that a large fee award would impose a significant financial hardship on them. In support, they have included an affidavit indicating that Mr. Sepi's total monthly income is $2,000, that his estimated monthly expenses are $1,850, and that he lacks significant assets. For their part, Defendants' contend that the $170,705.00 they are seeking to recover represents only a fraction of the total fees incurred defending the lawsuit and reflects a reduced hourly rate for their two lead attorneys.[4] Having found

---

[4] Defendants contend that their two lead attorneys expended time amounting to a total of $590,000.00 defending this lawsuit, but seek only the $131,349.00 in fees for 343.6 hours of work incurred between October 1, 2021 and March 14, 2022 – the period in which they were primarily working on the motion for summary judgment. Defendants' local counsel is seeking fees for the entire case (a total of 94 hours) in the amount of $39,560.00. For purposes of this motion, Defendants' out of state counsel has reduced its hourly rate to $420, the rate used by local counsel. Defendants also seek fees associated with work performed by a senior research analyst at a rate of $275 per hour. Defendants have

Plaintiffs' claim was objectively unreasonable and improperly motivated, the Court agrees with Defendants that an award of attorney's fees is appropriate, but must also consider Plaintiff's limited financial resources. After weighing the relevant factors, the Court concludes that a fee award of $35,000.00 is reasonable in this case. This award is sufficient to deter the pursuit of objectively unreasonable claims but will avoid imposing "an inequitable burden on an impecunious plaintiff." *Karmo*, 2019 WL 13095278, at *4 (quotation marks omitted). Reducing Defendants' requested fees in this manner is consistent with the objectives of the Copyright Act, because it ensures that plaintiffs who sue for copyright infringement – who "can run the gamut from corporate behemoths to starving artists" – will not be unreasonably deterred from asserting colorable claims to protect their original works. *Fogarty*, 510 U.S. at 524-25.

Accordingly, Defendants' Motion for Attorney's Fes Pursuant to 17 U.S.C. § 505 [Doc. No. 65] is **GRANTED** in part and **DENIED** in part. The motion is granted to the extent that, as prevailing parties, Defendants are entitled to a reasonable fee. The amount sought, however, exceeds that which is reasonable and equitable, given the specific circumstances of this case. Accordingly, Defendants are awarded attorneys' fees in the amount of $35,000.00.

---

supported their fee request with a summary identifying each attorney or support staff performing the work, the number of hours incurred by that individual, and the applicable hourly rate for that individual's services. Def.s' Br., Doc. No. 65-1 and 65-2.

Fee Add. 10

**IT IS SO ORDERED** this 30th day of September, 2022.

                    TIMOTHY D. DeGIUSTI
                    Chief United States District Judge

Fee Add. 11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

WHYTE MONKEE PRODUCTIONS,   )
LLC, and                    )
TIMOTHY SEPI,               )
                            )
    Plaintiffs,        )
                            )
v.                          )    Case No. CIV-20-933-D
                            )
NETFLIX, INC., and          )
ROYAL GOODE PRODUCTIONS, LLC, )
                            )
    Defendants.        )

## ORDER

Before the Court is Defendants Netflix, Inc. and Royal Goode Productions LLC's Motion for Review Taxation of Costs [Doc. No. 83]. Plaintiffs have responded in opposition [Doc. No. 84] and Defendants have replied [Doc. No. 90]. The matter is now at issue.

Defendants submitted a bill of costs in the amount $11,484.20 [Doc. No. 64]. After Plaintiffs filed a written objection [Doc. No. 72] and Defendants filed a response [Doc. No. 79], the Clerk of Court held a hearing and awarded costs in the amount of $2,629.35 [Doc. No. 81]. Defendants now seek review of the Clerk's decision to deny taxing certain expenses as costs. Plaintiffs do not challenge the amount taxed by the Clerk, but do object to the additional costs sought by Defendants.

## DISCUSSION

Under Federal Rule of Civil Procedure 54(d), "costs—other than attorney's fees—

Fee Add. 12

should be allowed to the prevailing party." Rule 54(d) creates a presumption that the district court will award the prevailing party costs. *Cantrell v. Int'l Bhd. of Elec. Workers, AFL-CIO, Loc. 2021*, 69 F.3d 456, 459 (10th Cir. 1995). The costs that may be awarded are limited to the expenses that fall into one of the six categories codified at 28 U.S.C. § 1920. The Supreme Court describes these categories as including "relatively minor, incidental expenses" that represent only "a fraction of the nontaxable expenses borne by litigants." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). "Because taxable costs are limited by statute and are modest in scope," courts should resist "stretch[ing] the ordinary meaning of the cost items Congress authorized in § 1920." *Id.* The burden is on the prevailing party to establish the amount of costs to which it is entitled. *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009). With that guidance in mind, the Court separately addresses each of the additional expenses Defendants seek to recover.

### 1. Video Deposition Costs

Defendants first argue that they are entitled to all costs associated with obtaining the video deposition of Mr. Sepi. The Clerk awarded Defendants the fee associated with creating the written transcript of the deposition, but denied all costs incurred for videography and synchronization. The costs statute authorizes costs for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." The fees for obtaining a video deposition fall within this category. *Tilton v. Cap. Cities/ABC, Inc.*, 115 F.3d 1471, 1477 (10th Cir. 1997); *Pitts v. Elec. Power Sys., Inc.*, No. 08-CV-96-GKF-PJC, 2009 WL 3766270, at *2 (N.D. Okla. Nov. 10, 2009). Further, the Tenth Circuit has recognized that fees for both a printed and recorded transcript for the same witness may be

2

taxed as long as they are "necessarily obtained" for use in the case. *Tilton*, 115 F.3d at 1478.

Materials and services are necessarily obtained and therefore taxable if they "are reasonably necessary for use in the case, even if they are ultimately not used to dispose of the matter." *In re Williams*, 558 F.3d at 1148 (quotation marks and citation omitted). When determining whether an item was reasonably necessary, courts "do not employ the benefit of hindsight" but instead rely "solely on the particular facts and circumstances at the time the expense was incurred." *Id.* (quotation marks and citation omitted). Accordingly, "costs associated with that portion of discovery which had no bearing on the dispositive motion, but which appeared otherwise necessary at the time it was taken for proper preparation of the case" may be recoverable, while materials "that merely added to the convenience of counsel" are not. *Id.* (quotation marks and citation omitted).

Defendants contend that a video deposition of Mr. Sepi, in addition to a printed transcript, was reasonably necessary because there was a strong likelihood it would be used at trial for impeachment purposes. Given the importance of Mr. Sepi's testimony, the Court finds that a video deposition was reasonably necessary for effective trial preparation at the time the deposition was taken. *Pitts*, 2009 WL 3766270, at *3 (noting the "importance of [plaintiff's] testimony, and the likelihood that [defendant] would seek to impeach [plaintiff's] credibility at trial" in awarding costs for videotaped deposition). Accordingly, the Court will award Defendants the services, hourly, electronic access and exhibit fees associated with obtaining the video deposition.

Defendants also seek to tax the separate fees for synchronizing the deposition video

Fee Add. 14

with the printed transcript and for "media and cloud services." Defendants do not specifically explain what "media and cloud services" includes. In addition to transcript fees, § 1920 provides that "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" may be taxed. 28 U.S.C.A. § 1920(2). However, given "the narrow scope of taxable costs," *Taniguchi*, 566 U.S. at 573, the Court is not persuaded that deposition synchronization or "media and cloud services" qualify as either a transcript fee or a copying fee. *See Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc*., 741 F.3d 955, 959 (9th Cir. 2013) (holding that "synchronizing deposition videotapes with their transcripts, while convenient, was not an act of copying or exemplification"). Accordingly, these portions of the video deposition fee will not be taxed.

## 2.  Related Costs for the Deposition

Defendants next seek various costs associated with obtaining the written deposition transcript of Mr. Sepi, including the court reporter's appearance fee, extended hours fees, and exhibit sharing fees.[1] Although there is by no means unanimous agreement, "the large majority of courts that have considered the question have found that a court reporter's attendance fee is part of the transcript fee itself, and therefore is taxable." *Jacobs v. Cnty. of Hennepin*, No. 19-CV-2879 (PJS/HB), 2021 WL 509284, at *2 (D. Minn. Feb. 11, 2021); *see also Extra Equipamentos E Exportacao Ltda. v. Case Corp.,* 541 F.3d 719, 727 (7th Cir. 2008) ("Since the reporter cannot make the transcript without attending the

---

[1] Defendants do not seek review of the denial of other miscellaneous deposition costs.

Fee Add. 15

hearing, the separate attendance fee is properly regarded as a component of the fee for the transcript."); *Arrambide v. Wal-Mart Stores, Inc*., 33 F. App'x 199, 203 (6th Cir. 2002) (unpublished) ("The court reporter's appearance fee is necessary to take a deposition. Hence, the district court correctly determined that it was permissible to tax costs for the appearance fee."); *Foster v. Mountain Coal Co., LLC*, No. 12-CV-03341-LTB-MJW, 2015 WL 4484364, at *3 (D. Colo. July 23, 2015) ("The mileage and drive time fees are in the nature of so-called appearance fees charged by court reporters, which courts routinely allow."); *MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp*., No. CIV-06-1345-M, 2010 WL 3522375, at *2 (W.D. Okla. Sept. 8, 2010), aff'd, 468 F. App'x 816 (10th Cir. 2012) (holding "that the court reporter's attendance fees are recoverable"); 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2676 (4th ed.) ("If the expense of the deposition is held taxable, it is clear that the prevailing party is entitled to recover the fee of the officer presiding at the examination."). The Court will therefore award the attendance and time surcharge fees for the court reporter.

With respect to the exhibit share fee, the Court is not persuaded on this record that the cost to utilize exhibit sharing software qualifies as either a fee to obtain a deposition transcript or a fee for exemplification or copying. Unlike an attendance fee, a transcript can be created without the use of an exhibit sharing platform. Further, exhibit sharing software appears to go beyond merely generating electronic copies of documents. Accordingly, this cost will not be taxed.

### 3. Deposit Copies from the U.S. Copyright Office

Last, Defendants seek their full costs for obtaining deposit copies of Plaintiffs'

Fee Add. 16

works from the U.S. Copyright Office. Again, however, the Court is not persuaded that the fees separately charged by the Copyright Office for "retrieval services" and "additional services" qualify as the costs of making copies. Because these fees do not fit within any of the categories outlined in § 1920, they are not taxable.

### 4. Reasonableness of the Costs

Plaintiffs argue that costs should be denied because the amounts Defendants seek are unreasonably high and Mr. Sepi is indigent. However, "the denial of costs is 'in the nature of a severe penalty,' and 'there must be some apparent reason to penalize the prevailing party if costs are to be denied.'" *Rodriguez*, 360 F.3d at 1190 (citations omitted). The Court has previously acknowledged that Mr. Sepi has limited financial resources, *see* Order dated Sept. 30, 2022 [Doc. No. 82], although he is capable of paying filing fees. *See* Order dated Oct. 28, 2022 [Doc. No. 89]. In the Court's view, the costs awarded in this action are not unreasonably high and Mr. Sepi's limited financial means do not warrant penalizing Defendants via a denial of costs.

### CONCLUSION

For the reasons explained above, Defendants Netflix, Inc. and Royal Goode Productions LLC's Motion for Review Taxation of Costs [Doc. No. 83] is **GRANTED** in part and **DENIED** in part. Defendants are awarded the following costs, in addition to the costs previously taxed by the Clerk of Court: court reporter attendance fees in the amount of $525.50 and video deposition fees in the amount of $2,985.00. The total costs awarded are $6,139.85.

Fee Add. 17

**IT IS SO ORDERED** this 14th day of November, 2022.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

Fee Add. 18

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit via submission through the CM/ECF system.

Service upon opposing counsel will be completed via the notice of docket activity sent by the CM/ECF system.


Date: March 2, 2023                    Respectfully submitted,

                                       */s/ Andrew Grimm*
                                       Andrew Grimm